PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CIVIL APPEALS
Petitioner, Jonathan M. Terry, and his ex-wife were divorced in South Carolina in May 1984. By the terms of the divorce decree, custody of their 18-month-old daughter, Candance Terry, was awarded to the mother with liberal visitation privileges granted to petitioner, the father. Subsequently, mother and daughter moved back to Alabama, living initially with respondent, Eddie L. Sweat, the mother's father, and Mrs. Sweat, her stepmother. Following an unsatisfactory attempt to live independently in an apartment with her daughter, the child's mother returned the child to the home of her father and stepmother, thus transferring physical custody of the child to the Sweats.
A few months later, respondent, the grandfather, petitioned for modification of the South Carolina custody decree, seeking temporary legal custody of his granddaughter Candance. The child's mother did not oppose the petition; however, petitioner, the child's father, also filed a petition for modification seeking legal custody of his daughter.
Following an ore tenus hearing, the trial court entered an order finding that "the best interests of the child would presently be served by continuing her custody in the Maternal Grandfather." The trial court rejected the father's contention that the presumption in favor of the parent should be applied in this case. A majority of the Court of Civil Appeals affirmed, holding that the presumption in favor of a parent over a nonparent "does not apply when the non-custodial parent seeks modification of a prior custody decree." The Court of Civil Appeals cited this Court's opinion in Ex parte McLendon,455 So.2d 863 (Ala. 1984), and also relied on two of its own cases: Sasser v. Thompson, 457 So.2d 422 (Ala.Civ.App. 1984), and Lewis v. Douglass, 440 So.2d 1073 (Ala.Civ.App. 1983).
Rehearing was denied by the Court of Civil Appeals, and Jonathan Terry petitioned *Page 630 
this Court for a writ of certiorari. We granted the writ under A.R.A.P., Rule 39 (c)(4), to consider the applicability of this Court's opinion in Ex parte McLendon, supra, to the issue presented by the present case. That issue is whether a father, who was not awarded custody by a prior divorce decree, but who has not been found to be unfit, has thereby lost his prima facie right of custody in a subsequent custody proceeding as against the rights of a nonparent (the maternal grandfather) with whom the mother, who was awarded custody by the divorce decree, has placed physical custody of the child.
In Ex parte McLendon, supra, at 865, this Court followed the case of Ex parte Mathews, 428 So.2d 58 (Ala. 1983), among others, and stated:
 "A natural parent has a prima facie right to the custody of his or her child. However, this presumption does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a non-parent." (Emphasis added.)
The facts in Ex parte McLendon were that the parents of the child were divorced, and, by an agreement made a part of the divorce decree, custody of the minor child was awarded to thepaternal grandparents, who had already been caring for the child. The mother later petitioned to modify that decree, seeking custody of the child. The trial court granted the mother's petition, and the Court of Civil Appeals affirmed.McLendon v. McLendon, 455 So.2d 861 (Ala.Civ.App. 1984). In affirming, the Court of Civil Appeals distinguished this Court's opinion in Ex parte Berryhill, 410 So.2d 416 (Ala. 1982):
 "The grandparents contend that the trial court mistakenly believed that the recent case of Ex parte Berryhill, 410 So.2d 416 (Ala.), on remand, 410 So.2d 419 (Ala.Civ.App. 1982), required that the natural mother be proved unfit in order to deny her custody. They assert that the trial court improperly applied this standard to the case at bar, thus imposing upon the grandparents the burden of proving the mother's unfitness. . . . Berryhill says that when a contest for custody of a child arises between a parent and a third person, the parent is deemed to have a superior claim to custody which should not be disturbed unless it plainly appears that the interest of the child requires it be set aside. We consider this to mean nothing more than that for a third person to overcome the presumptive superior right of a parent to the custody of his or her child, there must be clear and convincing evidence that the parent is so unfit or unsuited for custody that the best interest of the child will be served by granting custody to the third person.
 "The court has said that the presumptive superior claim of a parent is ended once there has been a decree granting custody of the child to a third person, rendered upon testimony showing unfitness of the parent and best interest of the child to lie in the custody of the third person. In other words, the issue of best interest of the child would not thereafter be subject to the presumed superior right to custody of the parent. Chandler v. Manning, 411 So.2d 160 (Ala.Civ.App. 1982); Willette v. Bannister, 351 So.2d 605 (Ala.Civ.App. 1977).
 "Therefore, the only burden of proof in this case was upon the mother. That burden, without benefit of presumption of primary right of a parent, was to show a change in circumstances since the divorce in 1980 and that the grant to her of custody was in the best interest of her child. The trial court by its decree determined that she met her burden. We may not reverse that determination unless it is so unsupported by the evidence as to be palpably wrong. Lightfoot v. Bylsma, 412 So.2d 813 (Ala.Civ.App. 1982)." (Emphasis added.) 455 So.2d 862-63.
With respect to the rights of the mother, this Court, on certiorari, also distinguished McLendon from Ex parteBerryhill, 410 So.2d 416 (Ala. 1982), noting that the Court of Civil Appeals' interpretation of Berryhill was correct: *Page 631 
 "In returning custody to the mother, the trial court may have incorrectly given the mother the benefit of this presumption. The trial court apparently misconstrued our holding in Ex parte Berryhill, supra, wherein this Court said that in a contest between a natural parent and a non-parent for custody of a child, the natural parent has a superior right to custody. The Court of Civil Appeals correctly noted that the holding of Berryhill has no application when there is a prior decree removing custody from the parent. The superior right of the mother in this case was cut off by the prior decree awarding custody to the grandparents. McLendon v. McLendon, 455 So.2d at 862.
"The correct standard in this case is:
 "`Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] child's welfare.'
 "Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), quoting the Supreme Court of Virginia, Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623 (1898)." (Emphasis added.) Ex parte McLendon, 455 So.2d at 865.
Unlike Ex parte McLendon, where the prior decree awarded custody to a nonparent, the case of Ex parte Berryhill, like the present case, involved a prior decree awarding custody to the other parent. Although similar to Ex parte McLendon in that the contest here is between a parent and grandparents, we find the present case to be more factually similar to Ex parteBerryhill (and others discussed ante), even though there the right of custody was between the noncustodial parent and a step-parent.
In Ex parte Berryhill, the parents divorced, and by the divorce decree, custody of their 10-year-old son was awarded to the mother. The mother subsequently remarried and divorced again, but resumed living with her second husband, the boy's stepfather, until her death. Following the mother's death, both the noncustodial father and the stepfather sought custody of the boy. The Court of Civil Appeals affirmed the grant of custody to the stepfather. This Court reversed, holding that the Court of Civil Appeals "utilized the wrong test of parental qualification for custody of a minor child by its natural parent." 410 So.2d at 417. This Court went on to state the presumption in favor of a natural parent:
 "[T]his Court has recently adhered to the strong presumption in Sullivan v. Mooney, Ala., 407 So.2d 559 (1981), wherein we quoted with approval from Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910 (1955):
 "`The law devolves the custody of infant children upon their parents, not so much upon the ground of natural right in the latter, as because the interests of the children, and the good of the public, will, as a general rule, be thereby promoted. It is a fair presumption, that so long as children are under the control of their parents, they will be treated with affection, and their education and morals will be duly cared for. . . .
 "`. . . So strong is the presumption, that "the care which is prompted by the parental instinct, and responded to by filial affection, is most valuable of all"; and so great is the reluctance of the court to separate a child of tender years from those who according to the ordinary laws of human nature, must feel the greatest affection for it, and take the deepest interest in its welfare — that the parental authority will not be interfered with, except in case of gross misconduct or where, from some other cause, the parent wants either the capacity or the means for the proper nurture and training of the *Page 632 
child. Where a contest for the custody of a child arises between its father or mother and a third person, the superior claim of the parent ought not, in our opinion, to be disturbed, unless it plainly appears that the interests of the child require it to be set aside. [Striplin v. Ware, 36 Ala. 87, 89-90 (1890).]'" (Emphasis added.) Id.
Thus, in Ex parte Berryhill, the initial award of custody to the mother in the divorce proceedings did not serve to deprive the noncustodial father of his prima facie right to custody in a subsequent contest between himself and the stepfather, a nonparent. In the case sub judice, while the mother, to whom custody had been originally awarded, has not died, as was the case in Ex parte Berryhill, she has nonetheless voluntarily relinquished the custody of her child to a nonparent. The result of this circumstance is the same; it brings into question the relative rights of those who now seek legal custody of the child. Furthermore, neither of the conditions to the nonapplication of the presumption in favor of a parent, which this Court enumerated in Ex parte McLendon, occurred in the present case: Petitioner did not voluntarily forfeit custody, nor did the prior decree award custody to a nonparent, as was the case in Ex parte McLendon. Moreover, because the contest is not between the petitioner and a person to whom petitioner has "`transferred [custody] . . . by fair agreement'" (i.e., the mother, assuming the decree awarding custody to her was pursuant to an agreement), it is not petitioner's burden to "`show that a change of the custody will materially promote [the] child's welfare.'" Ex parte McLendon,supra.
Accordingly, we hold that the present case is controlled by this Court's decision in Ex parte Berryhill, supra, rather thanEx parte McLendon, supra. The standard to be applied in this case is that applied by this Court in Ex parte Berryhill, as reiterated by this Court in Ex parte Mathews, supra:
 "The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of such misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question. Hanlon v. Mooney, 407 So.2d 559 (Ala. 1981)." 428 So.2d at 59.
In his special concurrence to the majority opinion below, Judge Wright expressed the view that Ex parte McLendon and Exparte Mathews had been read too broadly by the Court of Civil Appeals, not only in the present case, but also in Sasser v.Thompson, supra. We agree as to the present case; however, our reading of Sasser, as well as of Lewis v. Douglass, supra, also relied on by the Court of Civil Appeals, leads us to conclude that those cases were correctly decided.
In Sasser v. Thompson, supra, the parents divorced, and, although the trial court found both parents unfit, it awarded custody of the child to the father, "because the Court had before it evidence indicating that the defendant father was living with his parents, who impressed the Court as decent, moral, law-abiding people, who could and would provide a stable, wholesome home for both the defendant and the minor child." 457 So.2d at 423-24. Subsequently, the child's mother petitioned to modify the original custody decree, seeking to gain custody of the child. The trial court, however, awarded custody to the child's paternal grandparents, refusing to place custody in the mother. The Court of Civil Appeals affirmed. As to the parents' prima facie right to custody, that court quoted from its *Page 633 
decision in Lewis v. Douglass, supra, at 1075:
 "`[A] natural parent has a prima facie right to custody of his child, as against the custody of a nonparent.
 "`The strong presumption favoring the natural parent as custodian applies to an initial custody determination. . . . We find no authority for applying this presumption when a noncustodial parent is seeking modification of the prior custody decree.'"
Despite this language from Lewis, the result reached inSasser can be justified because the prior decree awarding custody to the father expressly found the mother to be unfit.
We think that where there has been a finding of unfitness, the burden on the noncustodial parent changes, even as between his or her right of custody and that of a nonparent. Where a noncustodial parent has been found unfit, the rule set out inEx parte McLendon applies and, he must, therefore, show that an award of custody to him would materially promote the bestinterests and welfare of the child.
Unlike Sasser, the case of Lewis v. Douglass, supra, involved a factual situation that constituted one of the conditions expressly enumerated in Ex parte McLendon, supra, for not applying the presumption. In Lewis, the father retained custody of his son after the mother had abandoned them both. Several years later, however, the child's maternal grandparents, with whom the child had lived on a part-time basis, petitioned for custody of the child, alleging that the child, while with his father, was being exposed to the handling of an illegal drug. The court granted temporary legal custody of the child to the Montgomery County Department of Pensions and Security, anonparent, and placed physical custody of the child with the maternal grandparents, also nonparents. Thereafter, the father agreed to a joint custody arrangement, which was ratified by court order. A couple of months later, the father began custody proceedings, first in Florida, his state of residence (these proceedings were dismissed for lack of jurisdiction), and then later in Alabama. His Alabama petition for modification was denied, and the Court of Civil Appeals affirmed.
Clearly, under Ex parte McLendon, the father in Lewis, supra, was not entitled to the presumption because there had been a prior decree removing custody from him and awarding it to anonparent.
In the present case, petitioner has not been found to be unfit; indeed, the trial court noted in its order that "it is apparent that the child would be well cared for in either [the petitioner's or the respondent's] home." Nor has there been a prior decree awarding custody to a nonparent.
It is worth noting that in at least three earlier cases (both decided before this Court's opinion in Ex parte Berryhill), containing facts similar to those in the present case, the Court of Civil Appeals expressly recognized the prima facie right of the noncustodial parent as against the rights of noncustodial nonparents. See Massey v. Massey, 410 So.2d 422
(Ala.Civ.App. 1981); Pendergrass v. Watkins, 383 So.2d 851
(Ala.Civ.App. 1980); Ely v. Casteel, 341 So.2d 730
(Ala.Civ.App. 1977).
We agree with and adopt the view expressed by Judge Wright in his special concurrence that "when a decree awards custody to one parent, without a finding that the noncustodial parent is unfit, then the noncustodial parent [should] not [be] deprived of his prima facie right to custody, except as against that custodial parent." However, we are not convinced, as he was, that "there was sufficient evidence to overcome the primary right to custody of the father in order to promote the best interest of the child," and the case, therefore, must be remanded in order to allow the trial court to consider the case in light of the principles established by this opinion.
Accordingly, the judgment of the Court of Civil Appeals is reversed, and the case is remanded to that court for an order remanding the case to the trial court for further proceedings. *Page 634 
REVERSED AND REMANDED WITH DIRECTIONS.
All the Justices concur except JONES, J., who concurs in the result.