The mother and father were divorced in August 1988. Custody of their two children was awarded to the mother, while the father was granted visitation rights.
On June 19, 1990, the father filed a petition to modify the divorce decree to place permanent custody of the parties' children with him. The petition was based on alleged misconduct by the mother detrimental to the children's welfare. The father also moved for pendente lite orders placing custody of the children with him until a final determination on his petition to modify. Pending a full hearing, the trial court scheduled a hearing on the issue of immediate custody.
Before the initial hearing was held, the father, mother, and maternal grandparents reached an agreement to place temporary custody of the children with the maternal grandparents until the matter could be brought before the court in the full evidentiary hearing. On June 29, 1990, the trial court ratified this agreement in an "Order Modifying Instanter Custody and Setting Cause for Hearing." At that time the full hearing on the father's petition for modification was set for August 1990.
Following an ore tenus proceeding held on August 9, 1990, the trial court entered *Page 423 
an order finding the mother to be an unfit custodian of the children and holding that a change in the children's custody would materially promote their best interests. The court, however, reserved jurisdiction to hold further hearings on the father's petition for custody. Pending further hearings, the order of June 29 was to remain in effect. The trial court also ordered the Department of Human Resources (DHR) to conduct studies of the homes of the maternal grandparents, the mother, and the father and to report its findings to the court. Upon receipt of the home-study reports, the trial court would schedule a final hearing in the matter.
DHR conducted the studies, and the trial court scheduled the final hearing for May 1991. On May 21, 1991, the maternal grandparents filed a motion for intervention, alleging that the mother and father had forfeited their custodial rights and seeking an award of custody to themselves as intervenors.
On May 29, 1991, following an ore tenus proceeding, at which the mother did not seek custody, the trial court entered a final order denying the father's petition for custody and instead awarding permanent custody of the two children to the maternal grandparents, with visitation to both the mother and father and support from the father only.
The father appeals. We reverse and remand with instructions.
It is well settled that a natural parent has a prima facie right to custody of his or her child as against a nonparent.Ex parte Terry, 494 So.2d 628 (Ala. 1986); Exparte Mathews, 428 So.2d 58 (Ala. 1983). Our courts have supported the presumption in favor of the natural parent, even as against grandparents. Ex parte Woodfin,596 So.2d 918 (Ala. 1992). This presumption recognizes that, as a matter of law, the best interests and welfare of the child are served by maintaining parental custody. Terry, 494 So.2d 628. Under the standard delineated in Terry, the presumption may be overcome only by proof that the natural parent "is guilty of such misconduct or neglect to a degree rendering that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question." Id. at 632.
The presumption, however, does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a nonparent. Ex parteMcLendon, 455 So.2d 863 (Ala. 1984). Pursuant toMcLendon, after there has been such a forfeiture or decree, the natural parent may not regain custody of the child unless the parent can show that a change would materially promote the child's welfare. Id.
A review of the record in the present case establishes that the father never voluntarily forfeited custody of his two children to the maternal grandparents, nor was custody removed from the father and awarded to the grandparents by a prior court decree. The trial court recognized this in its final order of May 29, 1991, expressly stating that the agreement between the parties to place temporary custody with the maternal grandparents did not amount to a forfeiture of custody by the father and that the June 29, 1990, order recognizing the agreement was for "instanter" custody. All parties, therefore, contemplated such an arrangement only until the court held a full hearing regarding permanent custody.
It is clear that the temporary placement of custody with the maternal grandparents was by a pendente lite order, i.e., a temporary disposition of custody pending a later final determination of the custody dispute. Such pendente lite orders do not overcome the presumption in favor of awarding custody to a parent over a nonparent. Creel v. Creel,582 So.2d 1153 (Ala.Civ.App. 1991); Sims v. Sims, 515 So.2d 1
(Ala.Civ.App. 1987). Consequently, the father did not lose his prima facie right to custody of his children. It was therefore necessary for the maternal grandparents, as intervenors, to show that the father was guilty of misconduct or neglect to a degree rendering him "an unfit and improper person to be entrusted with the care and upbringing" of the children. Terry, 494 So.2d at 632. *Page 424 
An examination of the trial court's final order reveals that the court made no express determination that the father was unfit for custody. The court appears to base its award of custody to the maternal grandparents largely on the fact that placing the children with the father would necessitate their changing to a school system where they have few friends. The court also improperly gave weight to the maternal grandparents' financial circumstances, which are superior to those of the father. Additionally, the court seems to believe that the children would receive more attention in their grandparents' home than in their father's home, as the father has remarried and has three other children in his current household.
However, the factors considered here by the trial court in awarding custody to the maternal grandparents are more appropriate for consideration under the McLendon
standard, but could not properly be used to establish the father's fitness or unfitness for custody under theTerry standard. See Self v. Fugard,518 So.2d 727 (Ala.Civ.App. 1987).
We find that there was no evidence before the trial court suggesting that the father was anything but a fit and proper parent to have custody of the children. The record reveals that when the father learned of the possibility that his children were being subjected to the mother's misconduct, he took immediate legal action to gain custody. There was no evidence presented to indicate that the father could not meet the financial needs of his children. The father and his current wife both work, and the father has a stable employment history. At the time of the hearing he was earning approximately $23,000 per year from his employer of eleven years. He kept in close contact with his children following his divorce and diligently exercised his visitation privileges. With the exception of one disputed payment during the pendency of this action, he regularly met his child support obligation of $400 per month.
The evidence further suggests that the father entered the arrangement allowing the two children to remain with the maternal grandparents only until he could prepare his current household for the presence of the children and until home studies could be conducted by DHR. See T.L.L. v.T.F.L., 580 So.2d 1359 (Ala.Civ.App. 1991). When the trial court indicated in an earlier order that an impediment to the father's assuming custody of the children was the lack of adequate room for them in his home, the father placed a second mortgage on the home so that he could make the expansions indicated by the court, adding two bedrooms and a bathroom to the house. The record indicates that following its home studies, DHR recommended that custody of the children be placed with the father.
In an in camera interview, which was not recorded, the parties' eleven-year-old son apparently expressed a desire to live with the maternal grandparents. Evidently, the child also expressed his belief that he was treated unfairly in the father's household. However, while the child's views are to be given some weight, they are not controlling. Livengood v.Sechler, 382 So.2d 567 (Ala.Civ.App. 1980). It appears that at least some of the problems between the father and the child resulted from the child's resistance to the father's efforts to discipline him. Also, it is understandable that the child would need a period of adjustment in order to feel at home in a new, and larger, household.
While we recognize the presumption of correctness attaching to a trial court's judgment following ore tenus proceedings,Nicholas v. Nicholas, 464 So.2d 527 (Ala.Civ.App. 1985), we find that the maternal grandparents did not demonstrate the father's unfitness to be entrusted with the care and upbringing of his children and thereby failed to meet the standard established in Terry. Consequently, we hold that it was error for the trial court to deny the father's petition to modify custody and that it was error for the court to place custody of the children in the maternal grandparents.
The judgment of the trial court is reversed, and the cause is remanded with *Page 425 
instructions for the trial court to enter an order consistent with this opinion.
The father's request for an attorney's fee on appeal is granted in the amount of $500.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.