646 So.2d 43 (1993)
Joseph W. PERKINS, Jr.
v.
Debi Taylor PERKINS.
AV92000120.
Court of Civil Appeals of Alabama.
December 17, 1993.
Rehearing Denied January 21, 1994.
Jack Drake of Drake & Pierce, Tuscaloosa, for appellant.
Kathryn McC. Harwood, Tuscaloosa, for appellee.
YATES, Judge.
The parties were divorced in October 1987. The mother, by agreement, was awarded custody of the minor daughter.
In July 1991, the father filed a petition for modification, seeking custody of the daughter, who was then nine years old. Proceedings in this case continued until March 22, 1993, when the father appealed the trial court's denial of his requested modification. He contends that the trial court erred in not awarding him custody and that the court made its determination by using the wrong standard of law.
In reaching its decision, the trial court made the following finding:
"[T]he court does not find the evidence to be clear and convincing to the point that there has been a material change in circumstances justifying a change in custody, nor does the Court find that the Plaintiff has proven the Defendant to be unfit to continue to have custody of the minor child of the parties...."
This evidentiary standard is appropriate when a nonparent attempts to overcome *44 the superior right of a parent to custody of his or her child. A nonparent is required to present clear and convincing evidence that the parent is unfit or unsuited for custody and that the best interests of the child will be served by granting custody to the nonparent, rather than to the parent. Ex parte Terry, 494 So.2d 628 (Ala.1986). The Terry standard was not appropriate in the instant case.
When a noncustodial parent seeks to modify a prior custodial decree, the evidentiary standards of Ex parte McLendon, 455 So.2d 863 (Ala.1984), must be applied. Here, the trial court failed to apply the proper standard. It utilized the standard for a nonparent seeking custody, when it should have used the less stringent McLendon standard. The trial court's failure to employ the proper standard is reversible error. Clayton v. Clayton, 598 So.2d 929 (Ala.Civ.App.1992).
The noncustodial parent (the father in this case) must show by substantial evidence that a change in custody will materially promote the child's best interests and welfare. Ex parte McLendon. He must also show that the positive good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Butts v. Startley, 600 So.2d 310 (Ala.Civ.App.1992).
During the custody hearing, the father presented evidence that a substantial and material change in circumstances had occurred; that the child could be happy living with him, her stepmother, and her stepbrother; and that the disruptive affect would be minimal.
The record revealed that the father had remarried, had had another child, and was willing and able to provide his daughter with needed love, parenting, and guidance. The father testified that he first became concerned about his daughter's welfare following certain incidents at school. She received grades of "D's" and "F's" in conduct from kindergarten through the second grade. She had been in trouble for telling dirty rhymes and pulling up her blouse. She had to be isolated from other children. The child's language and behavior became difficult for teachers to control; however, the mother testified that the child's conduct was not abnormal.
The father further testified that his daughter's extracurricular activities were governed totally by the mother's schedule. The child took piano lessons as long as they were taught at school. The father had offered to provide the money and transportation for ballet lessons, yet the child was not allowed to participate. The mother, in fact, told her daughter, "[Y]ou're not the ballet type."
The mother testified in her deposition that she did not know the last name of a single one of her daughter's numerous friends or any of the names of the parents of those friends.
Testimony also revealed that within a three-month period the daughter had seen five "R" rated movies. Scenes from the movies were presented as evidence, and the trial court commented on the explicit sex and extreme violence contained in the movies. The trial judge stated that the movies really upset him and that neither he nor any member of his family watched movies like the ones the child had seen.
Harriet Myers, a licensed clinical psychologist, testified that, generally, children who watch violent films become violent and that in turn they seek to watch more violence; she said parental intervention is the best policy. Myers further testified about test results reflecting levels of depression exhibited by the child. Myers testified that the child misinterpreted and distorted the material she absorbed; that tests suggested that she did not like to look at herself very much because to do so was painful; and that she avoided close relationships and assumed that relationships would be aggressive, rather than warm and loving. Myers testified that the child's greatest need was to be in an environment that would provide consistent love and guidelines with expectations for her behavior. She also said she believed the child should be involved in extracurricular activities. Myers testified that it would be in the best interest of the child to be placed in her father's custody.
*45 Cathy Brumback, a licensed clinical psychologist, evaluated the child at the request of the mother. Brumback testified that her studies revealed that the child saw both of her parents in a positive manner, but viewed her mother as the optimal source to meet her needs. Brumback reported that she felt the child needed to be with her mother. Brumback also testified, however, that R-rated movies have an adverse effect on children and that she did not allow her own children to watch network television.
The expert testimony conflicted as to the appropriate placement of the child. Numerous witnesses testified on behalf of each party. At this point, we note that the record revealed that both parents love their daughter, and that she is a very bright child. Evidence presented suggested the fact that the relationship between the mother and the daughter lacked some of the structure and discipline needed in a parent/child relationship. The record further revealed a need for more consistency and guidance in the child's life. After a complete review of the record, which indicates the difficulties that the child experienced adjusting to school life, the child's need for extracurricular activities, and the bad judgment exhibited by the mother, we conclude that the best interests of the child would be served by granting the father's requested modification of the custody order. In applying the McLendon standard, and taking into consideration the presumptions that apply to evidence presented ore tenus, this court holds that the trial court abused its discretion in not awarding custody to the father. Means v. Means, 512 So.2d 1386 (Ala.Civ.App.1987).
Accordingly, the judgment of the trial court is reversed, and the cause is remanded with instructions to enter an order consistent with this opinion. The mother's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., concurs.
THIGPEN, J., concurs in part and dissents in part.
THIGPEN, Judge, concurring in part and dissenting in part.
Although I concur with the majority that this case must be reversed for failure to apply the appropriate legal standard, I do not agree that the trial court should be instructed to award custody to either party.
Matters pertaining to custody rest soundly within the discretion of the trial court, and they come to this court clothed with the ore tenus presumption of correctness. Williams v. Williams, 402 So.2d 1029 (Ala.Civ.App. 1981). "The perception of an attentive trial judge" is especially important in custody cases. Williams at 1032. It is my opinion that this case should be reversed and the cause remanded for the trial court to reconsider the evidence utilizing the appropriate standard. Poe v. Capps, 599 So.2d 623 (Ala. Civ.App.1992). In recognition of the great deference given to the discretion of the trial court, the appellate courts of this state have, with substantial consistency, remanded custody cases for the trial court to reconsider, or to take additional evidence, utilizing the proper standard as enunciated by the appellate tribunal. See Ex parte R.C.L., 627 So.2d 920 (Ala.1993); Grantham v. Grantham, 628 So.2d 916 (Ala.Civ.App.1993); Evans v. Evans, 642 So.2d 474 (Ala.Civ.App.1993); Terry v. Terry, 598 So.2d 966 (Ala.Civ.App.1992); and Clayton v. Clayton, 598 So.2d 929 (Ala. Civ.App.1992). As an error-correcting court, it continues to be my position that "the more proper course would be for this court to reverse and remand the cause for further proceedings, so that the trial court may make a determination utilizing the proper standard. Regardless of the standard used, the result may be the same." W.B.Z. v. D.J., 645 So.2d 300 (Ala.Civ.App.1993) (Thigpen, J., concurring in part and dissenting in part).