THIGPEN, Judge.
This case involves the denial of a custody petition filed by the paternal grandparents.
In August 1993, W.L.S. and P.E.S. (paternal grandparents) filed a petition in the Circuit Court of Madison County for custody of their grandson, C.S. The petition alleged that the child had been abandoned to their custody for the previous 2⅜ years, and that the mother was unfit and unable to properly care for the child. They requested and were granted an ex parte award of temporary custody, pending a final hearing. Upon receiving the ore tenus evidence, the trial court dissolved the temporary custody order, and it ordered custody returned to the child’s mother. The grandparents appeal.
The record reveals certain relevant facts. R.W.S. (father) and D.L.N.S. (mother) were not divorced, but have lived separately since approximately July 1990, and they have three children. Although divorce proceedings were apparently commenced in North Carolina, no divorce judgment or custody order has been entered by any court, except a North Carolina judgment awarding the mother custody of the children, pendente lite. At the time of the hearing, the parties were still married, although they were separated pursuant to the North Carolina pendente lite order. There was testimony that prior to the separation, the marriage was afflicted by alcohol, drug, and spousal abuse. The mother sought treatment for alcohol abuse, and both parents were arrested on at least one occasion for drug-related charges.
Following their separation, the father moved to Florida and the mother eventually moved into her parents’ home in Georgia. The mother testified that the father has paid very little child support, and that he owes approximately $28,000 in past-due support.
It appears that due to difficulties which C.S. was having with the separation and with living with the maternal grandmother, and the financial difficulties of the family unit, both parents agreed that C.S. should be moved from the home of the maternal grandparents, and the paternal grandparents agreed to accept him into their home and enroll him in school in Madison County, Ala *753 bama. Apparently, there was no discussion regarding how long C.S. would remain with the grandparents. In the spring of 1991, C.S. moved to Huntsville with the paternal grandparents, who enrolled him in a private educational institution and sought specialized counseling. Additional tutoring was obtained for C.S., and over the course of the next 2⅜ years, C.S.’s educational performance improved. Additionally, his emotional well-being improved, as exhibited by improvements in his communicative skills and increased interaction with peers and teachers.
It is undisputed that the father contributed nothing for the support of his children, and that the paternal grandparents have provided the bulk of the support for C.S. The mother made a partial payment on private school tuition of approximately $300 at the request of the paternal grandmother, and the mother provided other intermittent support for the children, such as airline tickets for them to visit their father. The grandparents admit that with the exception of their request for tuition assistance, they have never asked for financial assistance for C.S. Additionally, the grandparents assert that neither parent has expressed much interest in C.S.’s educational performance or in his upbringing. Even so, there was testimony of C.S.’s visits with his mother and sisters, as well as numerous telephone visits. Subsequently, the mother obtained employment and moved into a two-bedroom apartment with the other two children. During this period, the mother’s father died and she inherited some money and other assets. The grandparents complied with the mother’s request to prepare C.S. to return to live with her and his sisters.
The grandparents assert that the mother had promised to build a home, and that C.S. would have his own room; however, they contend that she spent her inheritance and could not fulfill that promise. The mother denies that she has spent all of the money, and contends that the estate is not settled, and that she intends to build a home when it is settled and the proceeds distributed. The mother testified regarding her commitment to lease a larger apartment upon C.S.’s return. The grandparents assert that her present apartment is inadequate, and that she shares the apartment with her boyfriend, although she is not married to him. The mother admits to the relationship, but denies that her boyfriend stays overnight while the children are there, asserting that he has his own separate living arrangements. Additionally, she testified that she intends to complete the divorce proceedings, albeit she was prompted to do so partly by these proceedings.
After hearing the evidence, the trial court made the following findings of fact:
“1. That in or about April of 1991 the [parents] did enter into an agreement [for the paternal grandparents] to accept the temporary custody of and to provide for the temporary care, maintenance and support of the minor child [C.S.].
“2. That in or about April of 1991 the [mother] permitted [the] paternal grandparents ... to have the temporary physical custody of [C.S.].
“3. That said temporary custody did not forfeit the permanent care, custody and control of the minor child to the [paternal grandparents].
“4. That since the [paternal grandparents] have obtained the temporary physical custody of [C.S.], there has been visitation between the [mother] and [C.S.], where [C.S.] has stayed in the [mother’s] residence for various periods of time.
“5. That the [mother] provides for the cure, maintenance and support of her two other minor children, who are the sisters of [C.S.] and grandchildren of the [paternal grandparents].
“6. That the [mother] is a fit and proper person to have the care, custody and control of [C.S.] returned to her.”
“Where the trial court has heard ore tenus evidence in a child custody case, an appellate court presumes the court’s findings to be correct and will not reverse absent a showing of clear abuse of discretion or plain error” and this presumption “is especially applicable where evidence is conflicting.” Ex parte P.G.B., 600 So.2d 259, 261 (Ala.1992).
It is well settled that a natural parent has a prima facie right to the custody of his or her child as against a non-parent. Ex *754 parte Mathews, 428 So.2d 58 (Ala.1983). To overcome this presumptive superior right, the non-parent must present clear and convincing evidence that the parent is unfit or unsuited for custody, and that the best interests of the child will be served by granting custody to the non-parent. Ex parte Terry, 494 So.2d 628 (Ala.1986). An exception exists if the parent voluntarily forfeits this right of custody to a non-parent, or if there is a prior judgment that removed the child from the custody of the parent and awarded custody to a non-parent. Terry, supra,; Ex parte McLendon, 455 So.2d 863 (Ala.1984).
The paternal grandparents obtained temporary legal custody vis a vis an ex parte order. The mother had no notice and no opportunity to be heard. Therefore, the evi-dentiary burden remained on the paternal grandparents. Webb v. Webb, 508 So.2d 281 (Ala.Civ.App.1987).
Although there is some evidence of marital indiscretions, past poor decision-making, and alcohol abuse, nevertheless, there was evidence that the mother was adequately supporting and caring for her other two children. From this evidence, a factfinder could conclude that she was a fit and proper person to have the care, custody, and control of this child. Thus, this court finds no error in the trial court’s conclusion that the mother was a fit and proper person to have custody of her son. Ex parte P.G.B., supra.
The remaining issue is whether the trial court erred in finding that the mother had not voluntarily relinquished custody to the grandparents. Although the child lived with the grandparents for a substantial period of time, this fact, together with an ex parte order, does not necessarily support a finding that the mother voluntarily relinquished custody. There is no dispute that the child is being well cared for by the grandparents, and that they may have superior resources and greater stability; however, it can also be argued that the mother evidenced her care for her child by enlisting the aid of these caring grandparents during difficult and necessitous times. There is further evidence regarding visitations and telephone contacts between the mother and her son. The child asserts that he loves his mother. Except for the mother’s dire financial condition, brought on in part by the father’s failure to contribute support, it might not have been necessary to separate this child from his mother and other siblings. This court and our Supreme Court have encouraged custodial and noncustodial parents to devise informal custodial arrangements during necessitous times. See, e.g., Ex parte Couch, 521 So.2d 987 (Ala.1988), and Curl v. Curl, 526 So.2d 26 (Ala.Civ.App.1988).
After carefully reviewing the record evidence and the authorities cited, we cannot hold that the trial court abused its discretion. We adopt the following language: “The [trial court] saw and heard the witnesses, and could closely observe the contending principals in the case — all of which gave [it] an advantage which ... ‘must be of peculiar value in a case like this.’” Talley v. Lott, 283 Ala. 499, 501, 218 So.2d 828, 829 (1969) (citations omitted).
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.