This is a custody case.
Barbara Godwin, appeals from an order placing custody of her minor granddaughter with the child's father, Robert Bogart. The child was born in March 1991, and her parents never married. Her mother, Selena Godwin, suffered from cystic fibrosis, and in May 1992, the child and her mother, whose health was failing, went to Georgia to live with the maternal grandmother. In January 1992, the mother had executed a will in which she named the maternal grandmother as the child's guardian in the event of the mother's death. In September 1992, the mother executed a second will in Pike County, Alabama, declaring herself to be a resident of Pike County. In that will, the mother named the maternal grandfather as executor of her estate, and named the child's godparents as her guardians. The mother expressly stated in that will that neither the maternal grandmother nor the child's father was to be the child's guardian, although all parties, including the paternal grandparents, were to have liberal visitation. The mother died in Georgia on March 15, 1993.
On March 18, 1993, the maternal grandmother filed a petition in the Circuit Court of Pike County, seeking custody of the child. On that date, the trial court granted the grandmother "temporary" custody of the child "until further orders of this court." The father, the paternal grandparents, the maternal grandfather, and the child's godparents all filed a motion to intervene and answered the petition.
Numerous custody actions and other lawsuits relating to the death of the child's mother were filed, including the following: 1) on June 28, 1993, the maternal grandfather, as executor of his daughter's estate, filed a complaint in the Pike County Circuit Court against the maternal grandmother for chattels in specie and for unlawful detainer of the child; 2) on July 22, 1993, the maternal grandfather sought custody of the child in the Juvenile Court of Pike County; 3) on July 23, 1993, the paternal grandparents sought custody of the child in the Pike County Circuit Court; and 4) in September 1993, the maternal grandmother sued the maternal grandfather in the Probate Court of Pike County, contesting their daughter's second will. Additionally, the record discloses that the maternal grandmother had filed a petition in Georgia, and that the Georgia court had declined jurisdiction and returned it to the Alabama courts. *Page 608 
Based upon an agreement of all parties, on February 10, 1994, the Circuit Court of Pike County entered an order consolidating all of these cases. The court conducted ore tenus proceedings on August 10, 1994. On December 7, 1994, the trial court issued an order awarding custody of the child to her father, and granting visitation to all of the grandparents. The maternal grandmother's post-judgment motion was denied in January 1995; hence, this appeal.
On appeal, the maternal grandmother argues that the Circuit Court of Pike County lacked jurisdiction in this matter. She first contends that the Juvenile Court of Pike County has exclusive jurisdiction over the case, pursuant to Ala. Code 1975, § 12-15-30, and, thus, she argues that adjudication of this matter in the Pike County Circuit Court was improper.
Ala. Code 1975, § 12-15-2(a), states that "the circuit court and the district court shall exercise original concurrent juvenile jurisdiction sitting as the juvenile court." It has long been settled that "where two courts have equal and concurrent jurisdiction, the court that first commences the exercise of its jurisdiction in a matter has the preference and is not to be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction." Ex parte Stateex rel. Ussery, 285 Ala. 279, 281, 231 So.2d 314, 315 (1970); see also, Ex parte J.R.W., 630 So.2d 447 (Ala.Civ.App. 1992).
It is noteworthy that the maternal grandmother initiated custody proceedings in the Circuit Court of Pike County, and that she participated in or answered other related actions in the circuit court, including the consolidation agreement. It is a fundamental rule that
 "when a party invokes the jurisdiction of a court on an alleged state of facts which gives the court jurisdiction, and the court has proceeded to determine the controversy, the party or parties invoking its jurisdiction will not be permitted to assume an inconsistent position in the same proceedings or question the regularity thereof; and this principle applies on appeal as well as to the proceedings in the trial court."
Clark v. Holland, 274 Ala. 597, 599, 150 So.2d 702, 704 (1963).
The exclusive original jurisdiction of the juvenile court shall not be construed to "deprive other courts of the right to determine the custody or guardianship of the person of children when such custody or guardianship is incidental to the determination of cases pending in those courts." Ala. Code 1975, § 12-15-30(b)(1). The record discloses that five actions regarding the child's custody were filed in the circuit, juvenile, and probate courts of Pike County; on February 10, 1994, these actions were ordered consolidated, pursuant to an agreement of all parties, including the maternal grandmother. The maternal grandmother's argument that the Circuit Court of Pike County lacked jurisdiction over this matter is simply without merit.
The maternal grandmother next contends that the Pike County Circuit Court and the State of Alabama lacked jurisdiction in this matter because the State of Georgia is the child's home state, and that, pursuant to the Uniform Child Custody Jurisdiction Act, 28 U.S.C. § 1738A(b)(4), the State of Georgia had jurisdiction over this matter.
In reviewing child custody determinations, the "home state" is defined as "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months." 28 U.S.C. § 1738A(b)(4). The maternal grandmother contends that because the child and her mother lived in Georgia for nine months before the mother's death, Georgia was the child's "home state", and any determination regarding the child's custody was more properly brought there.
The Uniform Child Custody Jurisdiction Act,28 U.S.C. § 1738A(c), further states in pertinent part:
 "A child custody determination made by a court of a State is consistent with the provisions of this section only if —
 "(1) such court has jurisdiction under the law of such State; and
"(2) one of the following conditions is met: *Page 609 
 "(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons. . . .
 "(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships."
While the child and her mother lived in Georgia during the course of the mother's treatment for cystic fibrosis, we do not find that fact, alone, to constitute conclusive evidence that the mother and the child were residents of Georgia. The mother's will of September 1992, a mere six months before her death and the initiation of the custody proceedings by these parties, clearly reflects that the mother considered herself to be a resident of Pike County, Alabama, although at that time, she was physically in Georgia. Record evidence indicates that the care required by the mother during her illness necessitated that she and the child stay in Georgia near the maternal grandmother. The maternal grandmother also testified that she provided the mother's only medical insurance coverage, and that that coverage would have been lost if the child's mother and father had married.
Additionally, as noted earlier, the record discloses that the maternal grandmother had filed petitions in Georgia, and that the Georgia court declined jurisdiction, pursuant to28 U.S.C. § 1738A(g), which states:
 "A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."
Additionally, the record reveals that the child's father, her maternal grandfather, and her paternal grandparents all live in Alabama, that the child has a significant connection with this state, and that there is substantial evidence here concerning her present and future care, protection, training, and personal relationships. Accordingly, jurisdiction in Alabama could be invoked pursuant to 28 U.S.C. § 1738A(c)(2)(B)(i) and § 1738A(c)(2)(A)(ii). Regardless of where jurisdiction could have been properly invoked, the record reveals that the maternal grandmother initiated this action in Alabama. Once properly accepted, the action was subject to this state's jurisdiction, and Georgia properly declined jurisdiction.28 U.S.C. § 1738A(g).
The maternal grandmother next contends that the trial court's order was contrary to the preponderance of the evidence presented at trial, citing Ex parte McLendon, 455 So.2d 863
(Ala. 1984). She also contends that the father voluntarily abandoned the child, and that he failed to show that a change in custody would materially promote the best interests and welfare of the child. The record is devoid of any prior custody adjudication other than the order awarding custody pendente lite to the grandmother, nor will the record support a determination that the father relinquished his custodial rights. The standard set out by McLendon is simply inapplicable here.
It is well settled in Alabama that, although the child's best interests are paramount in custody disputes, a parent maintains a prima facie right to custody of his or her child that is superior to any custodial rights asserted by a nonparent.Ex parte Terry, 494 So.2d 628 (Ala. 1986). The law presumes that the best interests of the child are served by being with the parent. Terry, supra. Absent a prior order removing custody from a parent, a nonparent seeking custody may overcome the strong presumptive *Page 610 
superior right of that parent to have custody of his or her child only by presenting "clear and convincing evidence that the parent is so unfit or unsuited for custody that the best interest of the child will be served by granting custody to the third person." Terry, 494 So.2d at 630. The maternal grandmother did not produce evidence to meet this burden.
Additionally, we note that this custody determination comes to this court clothed with a presumption of correctness due to the long-standing rule of review regarding ore tenus proceedings. Cole v. Cole, 442 So.2d 120 (Ala.Civ.App. 1983). This court presumes that the trial court correctly applied its discretionary authority to adjudge the child's best interests because of the trial court's opportunity to see and hear the witnesses. Cole, supra.
We further note the trial court's observation that "there's no question [that there were] loving grandparents and a loving father seeking custody of [the child]. . . . There's no question . . . that everybody loves the child and wants what's in the best interest of the child." We conclude that the order awarding the child's custody to her father was supported by the evidence. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J., recuses.