MONROE, Judge.
G.H.W. (the father) and A.W.C. (the mother) were divorced in 1995, and by the divorce judgment the mother received custody of their two. daughters,■.LW. and M.W. In October 1998, the father petitioned for custody of the children, alleging that the mother’s new husband had sexually abused L.W. A hearing was held, and the court awarded the father temporary custody. The maternal grandmother intervened, seeking grandparent visitation. In April 1998, a hearing was held and the court awarded permanent physical custody to the father. An additional hearing was held regarding visitation and child support. The court awarded the mother supervised visitation and awarded the maternal grandmother visitation. The visitation schedule gave the maternal grandmother visitation of four hours every Friday night. The order also gave the mother visitation of eight hours every Saturday and four hours every Sunday. ■ The court’s order provided for the mother’s visitation with the children to take place at the paternal grandparents’ home.
In August 1999, the father filed a petition to modify the ordered visitation. The paternal grandparents moved to intervene, and the court granted the motion. A hearing was held on February 16 and 17, 2000. On March 27, 2000, the court entered a final order awarding the father and the paternal grandparents joint legal custody of the children, with the paternal grand *1100 parents having primary physical custody of the children. The court awarded the mother visitation. The father appealed, and the mother cross-appealed.
Parents have a prima facie right to the custody of their children. Ex parte Terry, 494 So.2d 628 (Ala.1986). In order for a nonparent to overcome the presumption that the parent is entitled to custody, the court must find from clear and convincing evidence that the parent is so unfit for custody that the best interests of the child will be served by granting custody to the nonparent. Id.; Matthews v. Matthews, 659 So.2d 621, 622 (Ala.Civ.App.1994), cert. denied, 659 So.2d 622 (Ala.1995).
In its judgment, the trial court wrote:
“[The mother] is an unfit parent. She to this date does not believe her daughter, [L.W.’s] statements about being sexually abused by her husband, [R.C.]. The court finds [the mother’s] assertion that she intends to divorce [her husband] to be ‘bogus.’ Even if she did legally divorce him the evidence is very clear that she has no intention of actually separating herself from him. She clearly has chosen [her husband] over her daughters.
“[The father] is concerned about being in control and ‘winning’ over [the mother] and even [the paternal grandparents]. He denies visitation because his mother is unable to care for three children, these two and his new child by his new wife. It appears to be [the father’s] new wife, [D.W.], who is actually in control. Interestingly she was not called to testify at the final hearing. The evidence is clear however that the minor children are terrified of her. Living in fear is not a way children should grow up. Because of his immaturity and his new wife’s terrorization of the minor children, he is not a fit person to have physical custody of the minor children.”
The court further found:
“[The paternal grandparents] are the only parties who have truly put the best interest of the minor children first. They have not petitioned for custody of the minor children but have indicated their willingness to be the custodians of the children. They are afraid of incurring the wrath of their son, [the father]. Nevertheless, they are willing to do whatever is best for the minor children. They are fit and proper persons to serve as legal and physical custodians of the minor children.
“The trial of this cause has been very disturbing. Placing minor children in the custody of nonparents should always be an unusual circumstance. It is, however, justified in this case. The best interest of the minor children require that they be placed in the physical custody of [the paternal grandparents].”
The father appeals, claiming that the trial court erred in awarding permanent physical custody of the children to the paternal grandparents and in finding him unfit. The mother cross-appealed, claiming that the trial court erred in failing to award her custody of the children and in finding that she was unfit.
The record indicates the following facts: In October 1998, L.W., then six years old, told the paternal grandmother about ongoing occurrences with the mother’s new husband which involved his sexually molesting her. The grandmother informed the father of these allegations, and he filed an emergency petition seeking custody of the children, which the court granted.
The allegations of sexual abuse were investigated, but were determined to be inconclusive. There was testimony that the mother did not believe the child’s allegations. The mother’s husband moved out *1101 of the mother’s home after the allegations were made. However, there was testimony that he had returned to the home after the father was awarded custody of the children. At trial, the mother testified that she and her husband were going to divorce. However, there was evidence to indicate that her husband was still living with her. There was testimony that she and her husband had built an additional room to their house for L.W. There was testimony that shortly before this final proceeding, the mother and her husband had built a playhouse for the children. There was evidence that after the allegations were made, the mother gave the girls presents from her husband. The evidence indicates that the mother’s husband sold girl Scout Cookies for L.W. and that the mother told L.W. that he had sold cookies for her. The mother testified that her husband had been a wonderful father to the children and that there was no reason for her to believe he had sexually molested her daughter.
The trial court found that the mother had no intention of actually separating herself from the man who allegedly molested her daughter. Based upon the foregoing facts, we find the trial court’s judgment finding the mother unfit to be supported by clear and convincing evidence.
Our review of the trial court’s judgment indicates the court found the father unfit because the children were terrified of his wife and because he is immature. However, from a complete review of the evidence, we conclude that the finding that the father is unfit is not supported by clear and convincing evidence.
The only testimony regarding the children’s fear of the father’s wife was that of the paternal grandmother. She testified that she believed the children were afraid of their stepmother’s harsh voice. She testified that the father’s wife did not yell or raise her voice to the children, but that her voice was harsh. She further testified that the father’s wife was very strict with the children, but that she had never seen her abuse the children.
The paternal grandmother expressed concern about the children’s eating habits. She testified that the father’s wife had asked her not'to let the children eat snacks after school. The father testified that when the paternal grandmother baby-sat the children after school, she would allow them to eat snacks and the children would not eat supper when they got home. The paternal grandmother testified that she had tried to buy L.W. an ice cream, but that L.W. was too afraid of getting in trouble for eating snacks. The mother testified that she was terrified of the way the children were treated while living with the father.
The father admitted that sometimes he does not allow the paternal grandmother to baby-sit the children. He explained that he and his new wife have a child and that the paternal grandmother refuses to keep all three children at the same time. He testified that the children did not understand why and that this would hurt his youngest child. There was evidence that the paternal grandmother is not in good health and is not capable of caring for all three children at the same time. The father admitted that he and his mother, the paternal grandmother, do not have a good relationship.
Before the final hearing began, the guardian ad litem expressed concern that M.W. was being taken to day care when she could be spending the day with the paternal grandmother. The guardian ad litem also expressed a concern that the husband’s wife’s mother sometimes cared for and baby-sat the children, instead of *1102 the paternal grandmother. The guardian ad litem’s concern was that “[t]here’s no blood relation between that woman and [L.W.].” However, the guardian ad litem did not express any concerns that the father was “unfit.”
The pastor of the father’s church testified that the children and the father and his wife attended church and that they appeared to be a stable family. L.W.’s teacher testified that she was well adjusted and did Well in first grade. A counselor who had had sessions with L.W. from March 1999 through November 1999 testified that L.W. discussed her family during sessions and that she had never discussed any problems with her father or her father’s wife.
It is well settled in Alabama that, although the child’s best interests are paramount in custody disputes, a parent maintains a prima facie right to custody of his or her child that is superior to any custodial rights asserted by a nonparent. Ex parte Terry, 494 So.2d 628 (Ala.1986). The law presumes that the best interests of the child are served by being with the parent. Terry, supra. Absent a prior order removing custody from a parent, a nonparent seeking custody may overcome the strong presumptive superior right of that parent to have custody of his or her child only by presenting “clear and convincing evidence that the parent is so unfit or unsuited for custody that the best interest of the child will be served by granting custody to' the third person.” Terry, 494 So.2d at 630. Additionally, we note that grandparents do not stand as equals with parents in a custody dispute. See Matthews v. Matthews, 659 So.2d 621, 622 (Ala.Civ.App.1994).
There was not clear and convincing evidence indicating that the father is unfit or unsuited for custody of his children. The evidence presented shows that the 'father maintains employment and a home for his family and provides for them financially. Upon hearing the allegations of sexual abuse, he petitioned for and received custody of the children. The children have resided with him since that determination. In order for the court to award custody of these children to the paternal grandparents, the paternal grandparents had the burden of presenting clear and convincing evidence indicating that the father was unfit or unsuited for custody. Moreover, such evidence would have to be strong enough to overcome the father’s “strong presumptive superior right” to have custody of his children. That burden was not met in this case.
Although the trial court found the father unfit, it also awarded him joint legal custody of the children. An award of joint custody is certainly contrary to a finding of unfitness. How could the trial court find that there was clear and convincing evidence that the father was unfit or unsuited for custody and yet, in the same order, award him joint legal custody?
Based upon the foregoing, that portion of the judgment awarding the grandparents joint legal and physical custody of the children is reversed.
The father makes two additional arguments on appeal. He argues that the court erred in awarding the mother unsupervised visitation and in ordering that the guardian ad litem fees be paid by him and the mother. However, these arguments are not supported by authority. Therefore, he has failed to comply with the requirements of Rule 28(a)(5), Ala.R.App.P., as to those two issues. When an appellant fails to comply with Rule 28(a)(5), this court will affirm the judgment of the trial court. Harris v. Harris, 528 So.2d 866 (Ala.Civ.App.1988).
*1103 AS TO THE APPEAL: AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. AS TO THE CROSS-APPEAL: AFFIRMED.
ROBERTSON, P.J., and THOMPSON, J., concur.
YATES and CRAWLEY, JJ., concur in the result.