4 So.3d 468 (2007)
A.M.B.
v.
R.B.B. and P.B.
2050826.
Court of Civil Appeals of Alabama.
April 13, 2007.
Rehearing Denied June 22, 2007.
*469 Brenda L. Harrell and N. Katherine Pritchett of Legal Services Alabama, Inc., Birmingham, for appellant.
Elizabeth S. Parsons of Blair & Parsons, P.C., Pell City, for appellees.
PITTMAN, Judge.
A.M.B. ("the mother") appeals, asserting that the juvenile court erred in awarding physical custody of H.B. ("the child") to R.B.B. and P.B., the child's paternal grandparents ("the paternal grandparents").
This case has its genesis in an adoption proceeding. In October 2004, the paternal grandparents filed a petition in the St. Clair Probate Court to adopt the child, their granddaughter; at that time, the mother was still a minor and the child was approximately 18 months old. The probate court granted the paternal grandparents' adoption petition on January 18, 2005.
In July 2005, the mother sought to set aside the adoption. The paternal grandparents requested that the proceeding be transferred to juvenile court pursuant to § 26-10A-24(e), Ala.Code 1975; that request was granted. Following the transfer, the juvenile court conducted an ore tenus proceeding on March 16, 2006.
On May 25, 2006, the juvenile court entered a judgment in which it determined that the adoption had been improperly granted because the mother had been a minor at the time of the adoption and had not been appointed a guardian ad litem or an attorney to represent her interests during the adoption proceeding. After concluding that the child's adoption by the paternal grandparents was due to be set aside, the juvenile court made a determination that the mother and the child's father were unfit to be custodians of the child, and that court awarded custody of the child to the paternal grandparents. The mother filed a postjudgment motion; that motion was denied by operation of law. See Rule 1, Ala. R. Juv. P., and Rule 59.1, Ala. R. Civ. P. The mother filed a timely appeal asserting that the juvenile court erred in finding her unfit and in failing to set forth a definite visitation schedule in its judgment.
The record indicates that at the time of the child's birth in March 2003, the mother was a minor. The record also indicates that following the child's birth the mother lived in several different places, moving *470 from the home of one relative to another; the mother even lived with the paternal grandparents for a short time. Although the parties vigorously disputed where the child had lived during the first 18 months of the child's life, undisputed testimony established that the child had resided continuously with the paternal grandparents since the fall of 2004.
Much of the trial testimony concerned the paternal grandparents' attempt to adopt the child by obtaining consent forms from the child's father (their son) and the mother. The father did consent to the proposed adoption, but the mother testified that she never signed any consent-to-adopt forms. Although the paternal grandparents' attorney and the attorney's secretary testified that the mother had signed a set of consent forms, the record also indicates that the mother was a minor at the time of the alleged signing and that she was not appointed a guardian ad litem or an attorney to counsel her during the adoption proceeding. The mother's testimony regarding her participation and understanding of the adoption proceeding contradicted itself to some degree, but she did confirm that the paternal grandparents had been settled in their home and church for many years, had set aside bedroom space for the child to have a separate bedroom, and had willingly provided access for the mother to visit with the child during the pendency of the present action.
In contrast, the paternal grandparents offered evidence tending to show that the mother was immature, erratic, self-centered, and thoughtless. Moreover, the record indicates that, shortly before trial, the mother had entered a guilty plea to a charge of domestic violence brought by the mother's sister with respect to an incident that, the sister claimed, had caused the sister's children to be endangered. The juvenile court also heard evidence indicating that, although the child suffers from a severe asthma condition, the mother continues to smoke cigarettes near the child.
Initially, we note that matters regarding child custody are within the trial court's discretion, and a custody determination based upon oral testimony "`"`is accorded a presumption of correctness on appeal'"'"; moreover, judgments pertaining to such matters will not be reversed "`"`unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown.'"'" Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997)(quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993), quoting in turn other cases); see also S.C.S. v. S.W.S., 707 So.2d 278, 279 (Ala.Civ.App. 1997).
Alabama law provides that absent a natural parent's voluntary forfeiture of custody, a nonparent may overcome a natural parent's right to custody of his or her child only by adducing clear and convincing evidence that the parent has neglected the child to a degree that renders the parent unfit. See Ex parte Terry, 494 So.2d 628, 632 (Ala.1986); see also Horn v. Horn, 879 So.2d 1197, 1202 (Ala.Civ.App. 2003). That a child is born to unmarried parents does not affect the presumption in favor of a natural parent. Ex parte S.T.S., 806 So.2d 336, 341 (Ala.2001).
Although the mother contends that the paternal grandparents failed to meet their burden under Terry, we disagree. The mother's own testimony established that she had lived a nomadic life since the child's birth, moving among homes of relatives and failing to establish a stable home environment for the child. In addition, the mother admitted that she had pleaded guilty to a charge of domestic violence involving her sister's young children. Although *471 she denied that the charge involved anything other than "disturbing the peace," the record reflects that the mother was sentenced to 12 months of probation based upon her guilty plea. Even when the evidence is viewed in the most favorable light to the mother, her unstable living and working arrangements, coupled with her admission that her temper can result in violent outbursts, militates against her fitness as a parent.
The mother asserts that she never neglected or harmed the child and that she continued to visit with the child regularly throughout the entire time leading up to the trial in this case. Unfitness that warrants a custody award to a nonparent is not defined solely as active neglect or abuse. Rather, a determination of unfitness is generally based upon the totality of the evidence and is often evidenced by an unwillingness on the part of a parent to put the child's best interests ahead of the parent's own desires. Indeed, although the mother attempts to argue to the contrary, unfitness can be shown by evidence indicating an inability of a parent to provide food and shelter for himself or herself, much less for a child. See Ex parte G.C., 924 So.2d 651, 655-56 (Ala.2005). In this case, the evidence shows that the mother has never provided the child a stable home environment, that she has moved about from place to place, that she has worked only sporadically, and that she has depended on family and friends to provide the necessities of life for herself and the child. Based upon the evidence presented at trial, we conclude that the juvenile court could properly conclude that the child should be placed in the custody of the paternal grandparents. That portion of the judgment is due to be affirmed.
The mother also asserts that the juvenile court erred when it failed to set forth a definite visitation schedule for her and the child.[1] The judgment merely states that the mother "shall have supervised visitation with the minor child at all reasonable times and places as shall be agreed to by [the mother] and [the paternal grandparents]." We note that the determination of proper visitation
"`is within the sound discretion of the trial court, and that court's determination should not be reversed by an appellate court absent a showing of an abuse of discretion.' Ex parte Bland, 796 So.2d [340] at 343 [(Ala.2000)]. `The primary consideration in setting visitation rights is the best interest of the child. Each child visitation case must be decided on its own facts and circumstances.' DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998) (citation omitted)."
Williams v. Williams, 905 So.2d 820, 830 (Ala.Civ.App.2004).
Although this court recognizes that visitation is a matter left to the sound discretion of the trial court, such discretion is not unbounded. This court has previously held that it is reversible error for a juvenile court to leave the matter of a noncustodial parent's visitation rights to the sole discretion of a custodial parent or other legal custodian of the child. See, e.g., L.L.M. v. S.F., 919 So.2d 307 (Ala.Civ.App. *472 2005) (reversing a juvenile court's visitation award that placed the father in control of the mother's visitation with the child), and K.B. v. Cleburne County Dep't of Human Res., 897 So.2d 379 (Ala.Civ.App. 2004) (reversing a juvenile court's visitation award that essentially conditioned the mother's right to visitation with her child upon the consent of the child's aunt and uncle); see also D.B. v. Madison County Dep't of Human Res., 937 So.2d 535, 541 (Ala.Civ.App.2006) (plurality opinion reversing a juvenile court's judgment that made the mother's visitation "`subject to any conditions and limitations deemed to be necessary and appropriate'" by the child's great aunt, who was awarded custody of the child). Based upon the authority of those cases, the juvenile court in this case erred in failing to set forth a specific minimum visitation schedule.
Thus, the juvenile court's custody judgment is affirmed, but the provision regarding visitation is reversed. The cause is remanded with instructions to set forth a specific visitation schedule so as to provide for reasonable contact between the mother and the child.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
BRYAN, J., concurs specially.
BRYAN, Judge, concurring specially.
I concur with the majority opinion. I write specially to note that although a reasonable, clearly delineated visitation schedule is in order, nothing prohibits the juvenile court from fashioning the visitation schedule to restrict the type of visitation, e.g., by ordering supervised visitation, or to limit the mother's inappropriate behavior, e.g., by prohibiting the mother from smoking during the visitation.
NOTES
[1] Because the mother's parental rights have not been terminated, she retains the following rights, designated as "residual parental rights" as to the child, a term defined in § 12-15-1(24), Ala.Code 1975, as

"[t]hose rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of the person, including, but not necessarily limited to, the right of visitation, the right to consent to adoption, the right to determine religious affiliation, and the responsibility for support."
(Emphasis added.)