ROBERTSON, Presiding Judge.
On September 30, 1993, the trial court entered a judgment divorcing Tabatha DeAnne Lucas and Rex Allen Lucas. The trial court reserved the issues of the custody of the parties’ minor son, bom August 29, 1991, child support, and visitation until the father could be “personally served”.1 The *1343 trial court also restored to the mother the use of her maiden name, Hembree.
On April 20, 1994, Edward Phil Hembree (the maternal grandfather of the minor child) and Deborah Hembree (the maternal step-grandmother of the minor child), filed a petition to intervene, with supporting affidavits, seeking temporary custody of the minor child. The maternal grandfather and the maternal step-grandmother alleged that the minor child was and had been in their care, custody, and control most of his life; that the mother was living in a boarding home; that the boarding home environment was unsuitable for the minor child; and that the mother had no means of financial support.
On April 21, 1994, the trial court entered an order on the case action summary sheet granting the maternal grandfather and the maternal step-grandmother’s petition to intervene. That same day, the trial court entered an “Ex Parte Decree Pendente Lite,” awarding the maternal grandfather and the maternal step-grandmother temporary custody of the minor child and awarding the mother reasonable visitation rights with her minor child pending a final hearing. The trial court also granted the mother 30 days to submit a counter-affidavit in opposition to the maternal grandfather and the maternal step-grandmother’s petition.
On May 13, 1994, the mother filed a petition and a supporting affidavit requesting that the maternal grandfather and the maternal step-grandmother be cited for contempt of court. The mother alleged that the maternal grandfather and the maternal step-grandmother had failed and refused to permit her to exercise her visitation rights with her minor child. That same day, the mother also filed a motion for a temporary restraining order, with a supporting affidavit, alleging that the maternal grandfather and the maternal step-grandmother had been harassing her.
Following a hearing on May 23, 1994, the trial court entered an order on May 27,1994, finding that it was in the minor child’s best interest to remain with the maternal grandfather and the maternal step-grandmother pending a final hearing. The trial court amended the April 21, 1994, pendente lite order, specifying that the mother’s visitation with her minor child was to be on the first and third weekends of every month, and two weeks during the summer provided that she give the maternal grandfather and the maternal step-grandmother 10 days’ advance notice of her intent to exercise that visitation right.
On June 15, 1994, the mother filed a second petition to have the maternal grandfather and the maternal step-grandmother cited for contempt of court. The mother alleged that on May 27, 1994, she notified the maternal grandfather and the maternal step-grandmother of her intent to exercise her summer visitation with her minor child from June 21, 1994, through July 5, 1994, but that she had learned on June 14, 1994, that the maternal grandfather and the maternal step-grandmother had taken the minor child out of town and that they would not be returning for two weeks.
On July 1, 1994, the mother filed a second motion for a temporary restraining order, with supporting affidavits, alleging that the maternal grandfather and the maternal step-grandmother had been harassing, intimidating, and stalking her. That same day, the trial court entered a temporary restraining order, enjoining and restraining the mother, the maternal grandfather, and the maternal step-grandmother from “harassing, threatening, stalking or molesting one another pending a final hearing.” The trial court ordered that a copy of the restraining order be served on the mother, the maternal grandfather, and the maternal step-grandmother.
On July 11, 1994, the mother filed an amendment to her June 15, 1994, petition to have the maternal grandfather and the maternal step-grandmother cited for contempt of court, alleging that the maternal grandfather and the maternal step-grandmother had failed and refused to allow her to exercise her weekend visitation with the minor child. That same day, the mother also filed a verified petition for writ of habeas corpus, requesting that the maternal grandfather and the maternal step-grandmother be ordered to bring the minor child to court on July 15, 1994, the date set for a hearing on her contempt petition.
*1344 On July 15,1994, the mother filed a second amendment to her June 15, 1994, contempt petition, requesting that she be awarded a reasonable attorney fee. That same day, a hearing was held on the mother’s contempt petition; however, no ruling was made on the mother’s petition. On July 21, 1994, the mother filed another petition to have the maternal grandfather and the maternal step-grandmother cited for contempt and to have the April 21, 1994, pendente lite order set aside. The mother alleged that the maternal grandfather and the maternal step-grandmother had failed and refused to comply with the temporary restraining order, that she continued to receive harassing telephone calls from the maternal grandfather and the maternal step-grandmother, and that the maternal grandfather and the maternal step-grandmother had been following her. The mother requested that an immediate hearing be held, that the April 21,1994, pendente lite order be set aside, and that custody of her minor child be restored to her.
Following a hearing on the maternal grandfather and the maternal step-grandmother’s petition on September 1, 1994, the trial court entered a judgment on September 2, 1994, stating in pertinent part:
“[C]onsidering all the evidence presented, the Court finds that the [maternal grandfather and the maternal step-grandmother] have established that a material change in circumstances has occurred and that the best interests of the minor child ... are materially promoted if his custody is changed to them. As the [maternal grandfather and the maternal step-grandmother] have had temporary custody of this child for some time, little, if any, disruption should occur in the child’s life due to this change in custody.”
The trial court awarded the mother the following visitation with the minor child, subject to certain conditions: the first weekend of each month; from 9:00 a.m. December 26 through 6:00 p.m. on New Year’s day of each year; and two weeks during the summer of each year.
On September 15, 1994, the mother filed a motion for a new trial, or in the alternative, a motion to alter, amend, or vacate the judgment. On November 21,1994, the trial court denied the mother’s motion.
The mother appeals, raising six issues: (1) whether the trial court committed reversible error by applying the wrong standard of proof; (2) whether the trial court committed reversible error by placing undue emphasis on her financial situation; (3) whether the trial court committed reversible error by affirming the pendente lite order of April 21, 1994; (4) whether the trial court committed reversible error by failing to rule on her petition to have the maternal grandfather and the maternal step-grandmother cited for contempt of court; (5) whether the trial court committed reversible error by failing to correct and supplement the certified record on appeal to add the maternal grandfather and the maternal step-grandmother’s exhibit # 1, a video tape; and (6) whether the trial court committed reversible error by transferring custody of the minor child from her on the basis that she is a lesbian. However, we find the dispositive issue to be whether the trial court committed reversible error by applying the wrong standard of proof.
Our review in cases where the judgment of the trial court is based on ore tenus evidence is very limited. Beck v. Beck, 564 So.2d 979 (Ala.Civ.App.1990). In such a ease, the judgment of the trial court is presumed correct and will be affirmed when it is supported by competent evidence, unless it is shown to be plainly and palpably wrong. Blankenship v. Blankenship, 534 So.2d 320 (Ala.Civ.App.1988). However, where the question presented on appeal is one of law the ore tenus rule has no application. Ex parte Perkins, 646 So.2d 46 (Ala.1994).
Pursuant to Alabama law, a child’s parent has a prima facie right to custody of his or her child in a custody dispute between a parent and a nonparent. J.F. v. A.G., 607 So.2d 234 (Ala.Civ.App.1991). “ ‘So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of such misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question.’ ” Ex parte Terry, 494 So.2d 628, 632 (Ala.1986), quoting Ex parte Math *1345 ews, 428 So.2d 58, 59 (Ala.1983) (citation omitted) (emphasis in Ex parte Terry). However, in eases where the parent has voluntarily relinquished custody, or the trial court has removed custody from the parent and awarded it to a nonparent by virtue of a prior judgment, the presumption favoring the parent does not exist. Id.
Following the entry of such a judgment or the parent’s voluntary relinquishment of custody, the parent may not regain custody without establishing that a change would “materially promote” the child’s welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984). However, the granting of temporary custody to a nonparent, that is in the nature of pendente lite relief, does not defeat the presumption in favor of the parent. J.F., supra.
Here, the mother never relinquished custody of her minor child to a nonparent, nor did she have custody removed from her by a judgment that would defeat her prima facie right to her minor child.
The mother and the minor child lived with the maternal grandfather and the maternal step-grandmother for a substantial period of time. Additionally, the mother left the minor child in the care of the maternal grandfather and the maternal step-grandmother until she found a job and a place to live for herself and the minor child. These facts do not support a finding that the mother had voluntarily relinquished custody. This court and our supreme court have encouraged custodial arrangements during necessitous times. See Ex parte Couch, 521 So.2d 987 (Ala.1988), and Curl v. Curl, 526 So.2d 26 (Ala.Civ.App.1988). In this case, the mother evidenced her care of the minor child by enlisting the aid of the maternal grandfather and the maternal step-grandmother during difficult times. To allow the maternal grandfather and the maternal step-grandmother to argue that this mother had voluntarily relinquished custody of the minor child, would promote family discord and would discourage parents from seeking assistance from grandparents to ensure that the children have adequate care during times of difficulty. M.D.K. v. V.M., 647 So.2d 764 (Ala.Civ.App.1994).
Additionally, there had not been a prior judgment removing custody of the minor child from the mother and awarding custody to a nonparent. Instead, the court ordered only that the maternal grandfather and the maternal step-grandmother have temporary custody of the minor child pending a final hearing.
Thus, for the trial court to have removed custody from the mother, it had to determine that the mother was unfit. Ex parte Terry, supra. The trial court did not find the mother to be unfit, nor does its judgment contain any findings of fact to support such a conclusion.
In this case, the burden was on the maternal grandfather and the maternal step-grandmother to prove that the mother was guilty of such misconduct or neglect that she could be declared as unfit for having custody of her minor child. Id. However, the trial court misapplied the law in this case and made a finding that there had been a material change in circumstances and that the minor child’s best interests would be served if his custody was changed to the maternal grandfather and the maternal step-grandmother. As a result of this error, we are compelled to reverse the judgment of the trial court and to remand this cause to the trial court to consider the evidence in light of the standard of proof set out in Ex parte Terry. See Ex parte Perkins, supra.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN, YATES, MONROE, and CRAWLEY, JJ., concur.