790 So.2d 262 (2000)
N.G.
v.
L.A. and S.A.G.
2990788.
Court of Civil Appeals of Alabama.
November 3, 2000.
Rehearing Denied February 2, 2001.
*263 Stacy Lott Reed, Montgomery, for appellant.
Edwin L. Yates, guardian ad litem.
Wanda D. Devereaux and James D. Hamlett of Devereaux & Hamlett, L.L.C., Montgomery; and William R. Blanchard of Blanchard & Associates, L.L.C., Montgomery, for appellees.
THOMPSON, Judge.
The mother, N.G., appeals from the trial court's denial of her petition for modification of a custody determination pertaining to her minor son, B.G. We reverse and remand.
Before November 23, 1998, C.E.G. and N.G., husband and wife, lived together with B.G. The wife, N.G., was employed in a sales position. Her supervisor testified at the final hearing in the modification proceeding that her job performance during this period was excellent. On November 23, 1998, C.E.G. died of cancer. After the date of her husband's death and until February 25, 1999, N.G. was B.G.'s sole legal and physical custodian. During this time, N.G. was unable to fulfill her job requirements and was terminated. After her termination, N.G. remained unemployed for approximately six weeks; during this time she actively sought other employment. In February 1999, N.G. received an employment offer from a company in North Carolina and made plans to *264 relocate there. Her son was attending elementary school in Montgomery, Alabama, and she did not want to disrupt his school year; she also wanted to establish a home for him in North Carolina before moving him there.
N.G. disclosed her concerns about uprooting B.G. during the final months of the school year to B.G.'s paternal great uncle, L.A.; L.A. agreed to serve as a caretaker for B.G., together with S.A.G., B.G.'s paternal grandmother, while N.G. established a home in North Carolina. As a condition of the arrangement, L.A. insisted that N.G. execute documents transferring legal and physical custody of B.G. to L.A. and S.A.G. jointly during the time they would be caring for the boy. He explained that this was necessary so that he could provide the child with health insurance and so that he and S.A.G. could care for the boy's medical needs. L.A. and S.A.G. retained an attorney to prepare the necessary documents. Thereafter, the attorney filed, in the circuit court of Montgomery County, a petition to determine dependency and for custody, supported with an affidavit executed by the mother. On February 23, 1999, the trial court judge, Richard Dorrough, sitting as a juvenile judge, entered an order declaring the child dependent, pursuant to § 12-15-1(10)(b), Ala.Code 1975, and awarding joint custody to L.A. and S.A.G.
N.G. traveled to North Carolina to establish a home and begin her new job. During the months from March until June, she returned to Montgomery to visit her son on at least three or four weekends. In June 1999, N.G. took her son to North Carolina with her, and they remained there until they returned to Montgomery on July 4, 1999.[1]
On July 26, 1999, N.G. petitioned for a modification of the custody order pertaining to her son. L.A. and S.A.G. filed an answer in which they contended that N.G. would be required to establish the burden of proof set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), in order to obtain a modification of the February 23, 1999, custody order. N.G. filed a motion to clarify, contending that the February 23, 1999, order transferred only temporary custody of the child and, therefore, for her petition for modification, she claimed that the "best-interest" standard applied. On October 5, 1999, Judge Dorrough entered an order that provided that the Ex parte McLendon standard of proof governed the petition for modification.
A guardian ad litem was appointed to represent the interests of the minor child. On December 1, 1999, Judge Dorrough recused himself, ex mero motu, with an order that stated in pertinent part:
"This action was originally initiated by a petition filed on behalf of the paternal uncle [L.A.] and the paternal grandmother [S.A.G.]. Said petition alleged that the natural mother was in complete accord with the petition and an affidavit was filed by the mother. This case was presented to the undersigned by counsel for the petitioners as an uncontested case and, based upon the allegations of the petition, the affidavit from the mother and representations by counsel, these matters were handled administratively *265 and an order of custody entered on February 23, 1999, without a hearing and without appointment of counsel for the mother or a guardian ad litem for the child.
"The mother has now filed a `Petition for Return of Temporary Legal Custody' and it appears that she is now asserting an issue as to her consent which may require withdrawal by Counsel for the Petitioners as noted in open Court on October 5, 1999. In that this case was handled administratively, and representations were made by counsel to the court, the court finds that the undersigned should recuse himself so there is no appearance of impropriety or prejudice."
On January 7, 2000, N.G. filed a motion pursuant to Rule 60(b)(5), Ala.R.Civ.P., to set aside the February 23, 1999, order; in her motion she contended that she had not understood the implications of the legal documents she had signed in support of the petition to transfer custody to L.A. and S.A.G. In her motion, N.G. claimed that she had intended to transfer custody of her child to them only until the end of the school year. This motion was never ruled upon by the trial court.
Following a hearing, during which testimony was taken, the trial court entered an order finding that N.G. had failed to meet the burden of proof set forth in Ex parte McLendon and denying her petition for modification. The order awarded N.G. visitation privileges. N.G. filed a Rule 59 motion, which was denied by the trial court. This appeal followed.
On appeal, both the mother and the child's guardian ad litem filed briefs contending that the trial court applied the wrong standard when it ruled on the mother's petition for modification. In a case in which the trial court's judgment is based on ore tenus evidence, our review is very limited. Beck v. Beck, 564 So.2d 979 (Ala. Civ.App.1990). In such a case, the trial court's judgment is presumed correct and will be affirmed if supported by competent evidence, unless it is proven to be plainly and palpably wrong. Blankenship v. Blankenship, 534 So.2d 320 (Ala.Civ.App. 1988). Where the question presented on appeal is purely a question of law, however, the ore tenus rule does not apply and appellate review is de novo. Ex parte Perkins, 646 So.2d 46 (Ala.1994).
Alabama courts have traditionally followed the common-law presumption that a child's best interests are served by entrusting its care and custody to the natural parents. Ex parte D.J., 645 So.2d 303 (Ala.1994). This presumptive right can be overcome only by a finding that the parent is unfit. Ex parte Terry, 494 So.2d 628 (Ala.1986). However, in a case in which a parent has voluntarily forfeited custody, or the trial court has removed custody from the parent and has transferred custody to a nonparent by a prior judgment, the presumption favoring the parent does not exist. Id. Following the entry of a judgment transferring custody or the parent's voluntary forfeiture of custody of the child, the parent may not regain custody of the child without proving that such a custody modification would "materially promote" the child's welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984). "However, the granting of temporary custody to a non-parent, that is in the nature of pendente lite relief, does not defeat the presumption in favor of the natural parent." J.F. v. A.G., 607 So.2d 234, 235 (Ala.Civ.App.1991) (emphasis added).
After reviewing the record and the briefs, we find the dispositive issue to be whether the trial court erred in construing the February 23, 1999, judgment as an order adjudicating B.G. to be dependent, *266 pursuant to Ala.Code 1975, § 12-15-1(10)(b). Our review of the juvenile-dependency statutes and applicable caselaw leads us to conclude that the February 23, 1999, judgment was a temporary custody order and did not fall within the scope of the dependency statute. See S.T.S v. C.T., 746 So.2d 1017 (Ala.Civ.App.1999). Alabama juvenile statutes contain specific requirements that were not met in the present case; a petition must be filed alleging the facts constituting the dependency, and a dispositional hearing must be held. §§ 12-15-50, -52, and -65, Ala.Code 1975. In the mother's affidavit, which was filed in support of the February 22, 1999, "petition to determine dependency and for custody," the mother stated, "[I]t is my intention to have my child rejoin me when I am established in North Carolina but it is my understanding that the Petitioners are willing to retain legal and physical custody for so long as it is necessary to properly provide for my child." On the "Intake Information" form, filed on behalf of L.A. and S.A.G. in support of the February 22, 1999, "Petition to Determine Dependency and For Custody," the reason for petitioning for a change in custody was set forth as follows:
"The mother and father were married and residing together at the time of the father's death from cancer on November 23, 1998. The mother plans to relocate to North Carolina where she intends to establish a residence and obtain employment. She intends to leave Alabama on Tuesday, February 23, 1999. Until she establishes a residence and obtains employment, she is unable to provide for the child's support, training, or education. The paternal uncle and paternal grandmother are willing and able to have temporary legal custody and physical custody of the minor child. In order for them to provide properly for the child including provision of medical insurance, authorization of medical treatment, handling of educational matters, etc., legal custody is necessary. The mother plans to have the child rejoin her when she is established in North Carolina and after the 1998-1999 academic year; however, Petitioners are willing to retain custody so long as it is in the best interest of the child."
Further, on the portion of the "Intake Information" form requesting information about financial support for the subject child, the following information was provided:
"The mother is presently unemployed and has no means or sources of income from which to contribute to the child's support. She receives a Social Security check on behalf of the child in the amount of approximately $540 per month. Upon transfer of custody, arrangements will be made to have the check sent directly to the custodial parties. Since it is anticipated that custody will be transferred back to the mother when she obtains employment and after the 1998-1999 academic year, it is anticipated that it will be necessary to calculate child support under Rule 32 of the Alabama Rules of Judicial Administration for entry of a child support order by this Court."[2]
*267 We conclude that the February 23, 1999, order, which awarded joint custody of B.G. to L.A. and S.A.G. with the mother's consent, was a temporary custody arrangement entered to accommodate the mother during a time when she was obtaining employment and establishing a home in a new place. The order was also designed to facilitate B.G.'s adjustment to the move by allowing him to complete the school year in a school that was familiar to him. Alabama courts have consistently encouraged custodial arrangements during necessitous times. Hembree v. Hembree, 660 So.2d 1342 (Ala.Civ.App.1995).
Because the February 23, 1999, order was a temporary order, the mother never lost the presumption in her favor as a natural parent. See Ex parte Terry, supra. When a case is more in the nature of a custody case than a determination-of-dependency case, and the trial court relies on the juvenile-dependency statute to adjudicate the child dependent and award custody to a nonparent, that ruling will not stand. S.T.S., 746 So.2d at 1021. See also C.P. v. M.K., 667 So.2d 1357 (Ala.Civ.App. 1994).
N.G. is employed full-time at a radio station in Charlotte, North Carolina; she earns approximately $2,500 per month. She resides in a two-bedroom, two-bath apartment in a middle-class residential area of Charlotte that is close to the school she plans for B.G. to attend and close to the after-school care she has arranged for him at the YMCA. She has become a member of a church, and the pastor of that church testified in her favor as a character witness at the hearing. N.G. has made several friends in Charlotte who have been very supportive of her efforts to regain custody of B.G. The trial court admitted into evidence a home study of N.G.'s apartment performed by the North Carolina Department of Human Resources, apparently at N.G.'s request. The home study report was extremely favorable.
Based on the foregoing, we conclude that the trial court erred in applying the McLendon standard. We reverse the judgment and remand the case with instructions for the trial court to apply the correct standard in ruling upon N.G.'s petition for modification.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and CRAWLEY, J., concur.
YATES and MONROE, JJ., recuse themselves.
NOTES
[1] The testimony regarding this event is disputed; N.G. claims she had permanently moved the boy to North Carolina in June and had returned to Montgomery only to visit during the July 4, 1999, holiday. She claims that when she returned for the holiday, L.A. confronted her with the February 23, 1999, custody order and informed her that she had no right to take the child back to North Carolina with her. L.A. claims that the mother had only taken the boy for a visit to North Carolina and was returning the child to his custody on July 4, 1999.
[2] This sentence is ambiguous. Because the sentence begins by expressing the intention to transfer custody back to the mother at the close of the school year and when she became reemployed, we presume that the petitioners intended to state that it was anticipated that it would not be necessary to calculate child support and that the word "not" was deleted through a clerical error. The attorney confirmed this presumption when she testified at the hearing that child support was not initially calculated because it was anticipated that B.G. would rejoin his mother in North Carolina in June.