This appeal involves the question whether a custodial parent has the right to have her 17-year-old minor child admitted into a private psychiatric hospital against the minor child's will and without her consent. The issue presented on appeal is whether a private physician and private hospital that admit and hold such a minor child against the child's will, but based on the request and consent of the custodial parent, can be held liable for either false imprisonment or for violating the minor's civil rights.
 FACTS
Mr. D. and Mrs. D., parents of the plaintiff, R.J.D., were divorced in Marshall County, Alabama, in 1979. The court awarded the mother, Mrs. D., the care, custody, and control of R.J.D., then 12 years of age. R.J.D. lived with her mother in Birmingham, Alabama until certain events occurred that ultimately led to the subject controversy. On November 13, 1984, five years after she was awarded custody, Mrs. D. filed a complaint with the Family Court of Jefferson County alleging that R.J.D., then 17 years of age, had left home and was in need of supervision.
The Jefferson County Family Court held a hearing on the mother's petition, and granted custody of R.J.D. to her mother, who immediately had R.J.D. admitted into Children's Hospital. Although R.J.D. refused to consent to her admission, Dr. Gary Grayson, a psychiatrist employed with Vaughan Clinic[1] admitted R.J.D. into Children's Hospital, based on her mother's request and consent, and placed R.J.D. in the secure ward of the adolescent care unit. Two weeks later, on December 5, 1984, R.J.D.'s father smuggled her out.
On November 15, 1985, while still a minor, R.J.D., by and through her father, filed this action against Vaughan Clinic, Children's Hospital and Dr. Grayson, alleging medical malpractice, breach of contract, false imprisonment, and outrage, and seeking damages pursuant to 42 U.S.C. § 1983 for civil rights violations. On September 26, 1989, the trial court granted each defendant's motion for summary judgment as to R.J.D.'s claims based on false imprisonment, outrage, and civil rights violations, and certified the judgment as final pursuant to the provisions of Rule 54(b), A.R.Civ.P. R.J.D. appealed to this Court on January 17, 1990, but only as to her claims *Page 1227 
for false imprisonment and civil rights violations. R.J.D.'s medical malpractice and breach of contract claims are still pending in the trial court.
We must determine whether the trial court correctly entered summary judgment on the minor's false imprisonment and federal civil rights claims. To determine that, we initially must examine the underlying question of the legal right of a parent to determine what is in the best interest of a child regarding the necessity for psychiatric care.
 I
We first address the question of the propriety of the defendants' summary judgment on the plaintiff's false imprisonment claim. As defined in Alabama, "[f]alse imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code 1975, § 6-5-170.
It is undisputed that R.J.D. was admitted to Vaughan Clinic by Dr. Grayson against her will and without her consent; consequently, there is no dispute concerning the basic facts, the only dispute being over the right of a custodial parent to determine the medical needs of a 17-year-old unemancipated child regardless of the wishes of the child.
A child, like an adult, has a substantial liberty interest in not being confined unnecessarily for medical treatment, but Alabama has long recognized the principle that parents are, by the common law, under the legal duty of providing medical attention for their children. Ex parte University of SouthAlabama, 541 So.2d 535 (Ala. 1989); Osborn v. Weatherford,27 Ala. App. 258, 170 So. 95 (1936).
This Court has found no Alabama cases directly applicable to the facts in this case, and the legislature has not addressed the question of the legal rights of a child under the circumstances presented here, the voluntary admission of a minor child by a custodial parent to a psychiatric unit.[2]
Consequently, absent alteration by the legislature, the common law is controlling. Ala. Code 1975, § 1-3-1.
The parents' common law duty to care for their children is widely recognized:
 "It is ordinarily for the parent in the first instance to decide . . . what is actually necessary for the protection and preservation of the life and health of his child, so long as he acts as a reasonable and ordinarily prudent parent would act in a like situation."
59 Am.Jur.2d Parent and Child § 48, at 193-94 (1987).
Alabama is among the many states that respect this common law duty. Ex parte University of South Alabama, supra. Thus, in order to address adequately R.J. D.'s false imprisonment claim, the Court must necessarily consider the common law duty and the right of parents to provide for the care and health of their children. Under the common law it is not the child's consent to such care that controls. Rather, it is the parents' common law right and duty to provide for the well-being of their children that prevail.
In Osborn, supra, the court acknowledged the parents' "obligation, natural, moral, and legal, to furnish the necessaries" for their minor children:
 " 'This duty is recognized and discharged even by the higher orders of the animal world, and it would seem to be prescribed as to the human father by the most elementary principles of civilization as well as of law.' "
Osborn, 27 Ala. App. at 259, 170 So. at 96 (quoting 20 R.C.L. par. 30, at 622).
The common law deems parental care for children not only an obligation, but also an inherent right:
 "In such matters as deciding on the need for surgical or hospital treatment, the wishes of young children are not consulted, nor their consent asked when they are old enough to give expression thereto. The will of the parents *Page 1228 is controlling, except in those extreme instances where the state takes over to rescue the child from parental neglect or to save its life. Similarly, the right to grant or refuse a medical examination of a child belongs not to the child, but to the parents."
59 Am.Jur.2d. Parent and Child § 48 at 194 (1987) (emphasis added).
The United States Supreme Court followed this common law rule in Parham v. J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101
(1979). In Parham, minor children receiving treatment in the Georgia state mental hospitals challenged the commitment
procedures that allowed parents to commit their minor children without first obtaining their consent. The Supreme Court there aptly addressed the common law rights and duties of parents:
 "Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course; our constitutional system long ago rejected any notion that a child is 'the mere creature of the State' and, on the contrary, asserted that parents generally 'have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.' Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070
(1925). . . . Surely, this includes a 'high duty' to recognize symptoms of illness and to seek and follow medical advice. The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children. . . .
 "That some parents 'may at times be acting against the interests of their children' . . . creates a basis for caution, but is hardly a reason to discard wholesale those pages of human experience that teach that parents generally do act in the child's best interest. . . . The statist notion that governmental power should supersede parental authority in all cases because some parents abuse and neglect children is repugnant to American tradition."
442 U.S. at 602-603, 99 S.Ct. at 2504.
Although Parham involved the commitment of children to a state institution, the principle of law applied there would be the same when the commitment is voluntary and is to a private facility; therefore, the common law right and duty of parents to care for their children would apply to the facts in this case. The mere fact that R.J.D.'s mother decided to admit her into Children's Hospital without R.J.D.'s consent and against her will, would not automatically dictate the transfer of authority to make that decision from her mother to either R.J.D. or the State. There is no indication in the record that the action of R.J.D.'s mother would authorize a finding of neglect or abuse on the mother's part. Therefore, we hold that the authority and duty to care for R.J.D. rested solely with her mother, who had been given the care, custody, and control of R.J.D.
There are strong policy reasons for our holding. Parents are entrusted with providing for the best interest of their children. The law, in fact, authorizes both civil remedies and criminal penalties in cases of child neglect or child abuse. See Ala. Code 1975, §§ 13A-13-4 et seq., 26-14-1 et seq.,26-15-1 et seq., and 30-5-1 et seq. In order that parents may fulfill the duty the law places on them to provide for their children, the law allows them the authority to give the necessary consent for admitting their children into a health care facility. In view of the parental obligations to provide for the health care needs of children, and in view of the common law right of parents to exercise broad authority over their children, health care providers should be able to rely on a parent's consent when admitting a minor child into their care and should feel confident in relying upon that consent in detaining minor children for the purpose of treatment, for either physical or mental infirmities. *Page 1229 
In view of these policy considerations and the principles of the common law, which we must apply, we hold that the trial court did not err in finding that none of the defendants "unlawfully detained" R.J.D. in treating her, because the evidence is clear that each defendant admitted R.J.D. and provided treatment for her in reliance upon her mother's consent. We hold, therefore, that, with respect to R.J.D.'s claim based on an alleged false imprisonment, the trial court properly entered summary judgment in favor of Vaughan Clinic, Children's Hospital, and Dr. Grayson.
 II
R.J.D. also appeals from the summary judgment in favor of each defendant on her claim for damages pursuant to 42 U.S.C. § 1983
for civil rights violations. In order to state a prima facie claim under the provisions of § 1983, a plaintiff must allege 1) that the defendant's conduct caused a constitutional violation, and 2) that the challenged conduct was taken or committed "under color of state law." Arnold v. Board ofEducation of Escambia County, Alabama, 880 F.2d 305 (11th Cir. 1989).
R.J.D. seeks to show state action by arguing that the actions of the defendants constituted, at least, "de facto state action." Her claim of a nexus is that Children's Hospital had an affiliation agreement with the University of Alabama at Birmingham, that there is no significant distinction between the commitment of an individual to a private or quasi-private institution and commitment to a public institution and that the constitutional implications are the same. R.J.D. argues that the State of Alabama "rigorously regulates juvenile commitment proceedings," citing Code of Ala. 1975, § 12-15-90 et seq., which provides for the "involuntary commitment" of "any minor or child, as defined in [Chapter 15 of Title 12]," (see § 12-15-90(a)) and sets out the procedures that must be followed. But those provisions obviously apply only to commitments tostate institutions, and not to a private institution, such as is involved in this case, for which the legislature has provided no such procedure. In this case, Dr. Grayson, aprivate physician with Vaughan Clinic, "admitted" R.J.D. into Children's Hospital, a private — rather than a state — hospital, with the full consent of her mother.
Additionally, the defendants' action does not come within the term "under color of state law." R.J.D.'s mother merely entered into a private contract with Dr. Grayson, of Vaughan Clinic and Children's Hospital, for her daughter's care. There is clearly state action when the State accepts responsibility for the "involuntary commitment" of minors to state hospitals under § 12-15-90, et seq. However, in order to find "state action," we would have to find a sufficient nexus between state law and the "voluntary admission" of a private patient into a private facility by a private physician. To establish a nexus sufficient for private action to come within the term "under color of state law," the plaintiff must show that the private party has "exercised powers that are traditionally the exclusive prerogative of the state." Blum v. Yaretsky,457 U.S. 991, 1005, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). We cannot find that nexus here. Dr. Grayson's admission of R.J.D. into Children's Hospital, and the contract of Children's Hospital with R.J.D.'s mother for the care of R.J.D., are not exclusive state prerogatives. We find that R.J.D. failed to establish the required nexus sufficient to show that the defendants acted "under color of state law." Thus, the trial court correctly entered the summary judgment in favor of Vaughan Clinic, Children's Hospital, and Dr. Grayson as to R.J.D.'s claim based on an alleged violation of her civil rights.
Therefore, we affirm the summary judgment.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES and ADAMS, JJ., concur in part and dissent in part.
[1] Vaughan Clinic contractually provided psychiatric services to Children's Hospital.
[2] The State does, of course, set out the procedures for an involuntary commitment of a minor child to a State facility.
Ala. Code 1975, § 12-15-90 et seq.