812 So.2d 361 (2001)
R.S.C. and C.V.C.
v.
J.B.C.
2990943.
Court of Civil Appeals of Alabama.
August 31, 2001.
*363 Ronald L. Allen of Merrill, Merrill, Mathews & Allen, Anniston, for appellants.
Gordon F. Bailey, Jr., Anniston, for appellee.
MURDOCK, Judge.
R.S.C. and C.V.C., the married parents of two children, aged 13 and 10 years at the time of the trial in this case, appeal from a judgment of the Calhoun County Circuit Court awarding grandparental visitation to the paternal grandfather, J.B.C. ("the grandfather"), under § 30-3-4.1, Ala. Code 1975. That statute provides, in part, that any grandparent (such as the grandfather here):
"may file an original action for visitation rights to a minor child if it is in the best interest of the minor child ... [w]hen the child is living with both biological parents, who are still married to each other, whether or not there is a broken relationship between either or both parents of the minor[] and the grandparent and either or both parents have used their parental authority to prohibit a relationship between the child and the grandparent."
Ala.Code 1975, § 30-3-4.1(b). The statute states that the court "shall grant any grandparent of the child reasonable visitation rights if the court finds that the best interests of the child would be served by the visitation." Ala.Code 1975, § 30-3-4.1(d). The statute also specifies that "[t]here shall be a rebuttable presumption in favor of visitation by any grandparent." Ala.Code 1975, § 30-3-4.1(e).
Because we find § 30-3-4.1 unconstitutional as applied in this case, we reverse the judgment of the trial court.

I. Facts and Procedural History
The grandfather and his wife, S.M.C. ("the step-grandmother"), filed a petition for grandparental visitation on December 10, 1999. The grandfather and step-grandmother alleged that their continuous and ongoing relationship with the children had been terminated by the parents, without explanation. The parents answered, saying they had not interfered with the grandfather's visitation. They alleged that the step-grandmother, who is not a natural grandparent, had no right to visitation, and denied that she was a proper person *364 to have visitation with the children. The parents also asserted that the grandparental-visitation statute under which the petition was brought, § 30-3-4.1, Ala.Code 1975, was unconstitutional, and notified the State Attorney General of their constitutional challenge, as required by § 6-6-227, Ala.Code 1975. The Attorney General acknowledged service of the notice of the constitutional challenge and waived any further service or argument.
A guardian ad litem was appointed to represent the children, on January 24, 2000. On January 27, 2000, the parents moved for a summary judgment, contending that it was not in the best interests of the children to be in the presence of the step-grandmother. The grandfather and step-grandmother responded by alleging that the step-grandmother had acted as the children's paternal grandmother for most of the children's lives and that she had formed a bond with the children on that basis. On February 16, 2000, the grandfather and the step-grandmother filed a motion for a summary judgment in which they contended that they were entitled to visitation as a matter of law. On February 25, 2000, the trial court entered a summary judgment for the parents as to the step-grandmother's claim and ordered the parties to submit to mediation, which proved unsuccessful. The report of the mediator indicated that although the parents were willing to allow their children to visit with the grandfather, they were not willing to permit visitation where the children might also interact with the step-grandmother.
After conducting an ore tenus proceeding, the trial court entered a judgment that, among other things, denied all pending dispositive motions and granted overnight and other unsupervised visitation rights to the grandfather, consisting of one weekend per month, as well as an additional day during the week preceding New Year's Day and one day for Grandparents' Day. In response to the parties' post-judgment motions, the trial court subsequently modified its judgment to delete references to the presence of the step-grandmother, but otherwise denied those motions.
The parents appeal. In their brief on appeal, they contend, among other things, that the trial court's judgment must be reversed because, they say, § 30-3-4.1 impermissibly abridges fundamental constitutional rights guaranteed to them, as parents of minor children, under the United States Constitution and the Alabama Constitution. Consistent with the United States Supreme Court's recent decision in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and with this court's recent decision in J.S. v. D.W., [Ms. 2990431, May 4, 2001] ___ So.2d ___ (Ala. Civ.App.2001), we must agree with the parents' constitutional argument, and we pretermit discussion of all other issues raised.

II. Analysis

A. Grandparent-Grandchild Relationships
In recent decades, our society has seen a general disintegration of the family. It was not unreasonable, therefore, for our Legislature to attempt to strengthen extended family bonds by enacting a grandparental-visitation statute such as § 30-3-4.1. In the words of one court, such a statute responds
"`to the change in the demographics of domestic relations, mirrored by the dramatic increase in the divorce rate and in the number of children born to unmarried parents, and the increasing independence and alienation within the extended family inherent in a mobile society.' [Citation omitted.] There is no *365 reason a petty dispute between a father and a son should be allowed to deprive a grandparent and grandchild of the unique relationship that ordinarily exists between those individuals. One of the main purposes of the statute is to prevent a family quarrel of little significance [from] disrupt[ing] a relationship which should be encouraged rather than destroyed."
King v. King, 828 S.W.2d 630, 632 (Ky.), cert. denied, 506 U.S. 941, 113 S.Ct. 378, 121 L.Ed.2d 289 (1992). If a grandparent is physically, mentally, and morally fit, then a grandchild ordinarily will benefit from a relationship with that grandparent. That grandparents and grandchildren normally can be expected to have a special bond cannot be denied. Each can benefit from contact with the other. Among other things, the child can learn lessons of love, respect, responsibility, and family and community heritage.
Thus, we are not prepared to say, as does Justice Thomas in his special concurrence in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), that a state has no interest in enabling relationships between grandparents and grandchildren. Indeed, we believe that statutes such as § 30-3-4.1 express a quite rational interest on the part of the state in enabling such relationships. "Testimony" that states do have a rational interest in enabling grandparent-grandchild relationships is found in the fact that the legislatures of all 50 states have seen fit to provide for grandparent visitation in some form. Troxel, 530 U.S. at 73 n.*, 120 S.Ct. 2054 (cataloging statutes from all 50 states).[1]See also Herndon v. Tuhey, 857 *366 S.W.2d 203, 209 (Mo.1993) (observing that "grandparents are members of the extended family whom society has traditionally recognized as playing an important role in the raising of their grandchildren").
In circumstances such as those presented in the present case, however, we do not believe that the state's interest in enabling grandparent-grandchild relationships is a "compelling state interest" for purposes of our decisional framework under the Fourteenth Amendment. Consequently, it must yield when confronted by a fundamental "liberty" interest. Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

B. The Fourteenth Amendment
The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Writing for the plurality in Troxel, Justice O'Connor stated:
"The liberty interest at issue in this casethe interest of parents in the care, custody, and control of their childrenis perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), we held that the `liberty' protected by the Due Process Clause includes the right of parents to `establish a home and bring up children' and `to control the education of their own.'"
530 U.S. at 65, 120 S.Ct. 2054. After noting the Court's holding in Pierce v. Society of Sisters, 268 U.S. 510, 534-35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (the "liberty of parents" includes the right "to direct the upbringing and education of [their] children"), Justice O'Connor further observed:
"We returned to the subject in Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. `It is cardinal with us that the custody, care and nurture of the child reside first in the parents....'"
Troxel, 530 U.S. at 65, 120 S.Ct. 2054.
The family is the foundation upon which modern civilization is based. It is not surprising, therefore, that our courts have zealously protected the integrity of the family and that, in cases subsequent to Prince, the United States Supreme Court repeatedly has affirmed the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Michael H. v. Gerald D., 491 U.S. 110, 123-24, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989).

C. Fundamental Parental Rights
However, the right of a parent in regard to the care, custody, and control of his or her children arguably is not a constitutionally protected, fundamental right as against all persons or in all circumstances. For example, it may be argued that one parent has no fundamental right as against the other parent to the care, custody, and control of their children and that it is for this reason that a state may apply a simple "best-interests" standard in a custody dispute *367 without implicating the Fourteenth Amendment due-process rights of either parent.[2] Likewise, a parent who has voluntarily relinquished custody of a child arguably has no fundamental right to the custody of his or her child. See generally Ex parte Terry, 494 So.2d 628 (Ala.1986).
Viewed in this light, the question before us becomes whether, and to what extent, a parent's right to raise his or her own children retains its constitutionally protected, fundamental nature as against a grandparent seeking to exercise a state-recognized grandparental-visitation right. (Alternatively, in the factual context of the present case, the question might be stated: whether the "right" of a grandparent to have his or her grandchildren for overnight and other unsupervised "visits" infringes upon that "zone" of decisions within which parental rights are fundamental?)
In Troxel, the United States Supreme Court held "that the application of [a Washington statute] to a mother and her family violated her due process right to make decisions concerning the care, custody, and control of her daughters."[3] 530 U.S. at 75, 120 S.Ct. 2054. In J.S., this court recently held § 26-10A-30, Ala.Code 1975, unconstitutional, as applied, because it infringed upon "[the parents'] fundamental right to parent." ___ So.2d at ___. Even if these cases were to be limited to their respective facts, they would comport with the view that a parent's rights to the care, custody, and control of his or her children are fundamental as against a grandparent's attempt to obtain overnight and other visits during which the parents are not allowed to be present.
Specifically, the trial-court judgment that was overturned in Troxel had awarded to the grandparents two weekends of overnight visitation per month and two weeks of visitation during the summer. 530 U.S. at 61, 120 S.Ct. 2054. (The mother, in contrast, had made the judgment that the grandparents should have one day of visitation per month, with no overnight stay.) Similarly, in J.S., the trial court had awarded unsupervised visitation to the grandparents in their homes. (The parents in J.S. had made a determination that the child should have occasional, supervised visits with the grandparents in the parents' home.)
The involuntary removal of a child from a parent and the forced placement of the child, even temporarily, in the exclusive custody and control of a third party go to the core of what is fundamental about the parents' right in the care, custody, and control of their children. While, under normal circumstances, it might be viewed as unnatural for a parent to deny any access whatsoever by a grandparent to a grandchild, it is by no means "unnatural" for a parent to make decisions as to whether and to what extent a child should be released to a grandparent's exclusive custody for overnight and other unsupervised visits. It is in this context that we consider the parental right herein at issue to be a fundamental "liberty" interest protected by the Fourteenth Amendment.
*368 The United States Supreme Court has long held that a liberty interest protected under the Due Process Clause of the Fourteenth Amendment will be deemed fundamental if it is "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937). In Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the Supreme Court stated that "liberty" includes the "right of the individual... to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." 262 U.S. at 399, 43 S.Ct. 625.
Consistent with these early pronouncements, the Supreme Court has said that "[t]he liberty interest in family privacy has its source, and its contours are ordinarily to be sought, not in state law, but in intrinsic human rights, as they have been understood in `this Nation's history and tradition.'" Smith v. Organization of Foster Families, 431 U.S. 816, 845, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (emphasis added; quoting Moore v. City of East Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)); Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) ("the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, `deeply rooted in this Nation's history and tradition'"); Wisconsin v. Yoder, 406 U.S. at 232, 92 S.Ct. 1526 ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." (emphasis added)); Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (noting protection by Fourteenth Amendment of liberty interest "so rooted in the traditions and conscience of our people as to be ranked as fundamental"); Michael H. v. Gerald D., supra ("[The] insistence that the asserted liberty interest be rooted in history and tradition is evident... in our cases according constitutional protection to certain parental rights."). See also Planned Parenthood v. Casey, 505 U.S. 833, 952, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (Rehnquist, C.J., dissenting) (relying upon the historical and legal traditions of the American people and the English common law to define the parameters of "fundamental" rights).
Among those interests lying at the core of parents' rights to raise and care for their own children is the right to control their children's companions and associations. In concurring with the plurality's decision in Troxel, Justice Souter explained the importance of a parent's control over a child's personal associations:
"The strength of a parent's interest in controlling a child's associates is as obvious as the influence of personal associations on the development of the child's social and moral character. Whether for good or for ill, adults not only influence but may indoctrinate children, and a choice about a child's social companions is not essentially different from the designation of the adults who will influence the child in school. Even a State's considered judgment about the preferable political and religious character of schoolteachers is not entitled to prevail over a parent's choice of private school.... It would be anomalous, then, to subject a parent to any individual judge's choice of a child's associates from out of the general population merely because the judge might think himself more enlightened that the child's parent. To say the least ..., parental choice in such matters is not merely a default rule in the absence of either governmental choice or the government's designation *369 of an official with the power to choose for whatever reason and in whatever circumstances."
530 U.S. at 78-79, 120 S.Ct. 2054 (Souter, J., concurring).
In Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910 (1955), our Supreme Court recognized that "[t]he essence of custody is the companionship of the child and the right to make decisions regarding his care and control, education, health, and religion." 262 Ala. at 363, 78 So.2d at 916. Moreover, in J.S., this court observed:
"The common law recognized a right of parents to determine with whom their child would associate. In contrast to parents, grandparents generally had no common-law right to visitation if the parents objected. Ex parte Bronstein, 434 So.2d 780 [ (Ala.1983) ]; Ronald W. Nelson, "Troxel v. Granville: The Supreme Court Wades Into the Quagmire of Third-Party Visitation," 12 No. 6 Divorce Litig. 101 (June 2000)."
___ So.2d at ___. See Hoff v. Berg, 595 N.W.2d 285 (N.D.1999) (holding North Dakota's grandparent-visitation statute unconstitutional on the basis that it burdened the parents' fundamental right to control their children's associations). See also Meyer v. Nebraska, 262 U.S. at 399, 43 S.Ct. 625 (holding that "liberty" includes the right of parents to "establish a home and bring up children" and "to control the education of their own"); Pierce v. Society of Sisters, 268 U.S. at 534-35, 45 S.Ct. 571 (recognizing "liberty of parents ... to direct the upbringing and education of children under their control" as against law compelling public-school attendance); Wisconsin v. Yoder, 406 U.S. at 233, 92 S.Ct. 1526 (right and duty of parent as to children includes the "inculcation of moral standards, religious beliefs, and elements of good citizenship").
Overnight and other unsupervised "visitation" removes children from the presence and control of their parents and gives complete control and authority over the child for a period of time to another adult, essentially effecting a temporary or "partial custody."[4] Parents' interests in the nurture, upbringing, companionship, care, and custody of their children are thus implicated in ways that they are not with occasional, supervised visits. In Troxel, itself, the plurality made special note of the fact that there was "no allegation that [the parent] ever sought to cut off visitation entirely," but simply preferred to restrict visitation to "one short visit per month and special holidays." 530 U.S. at 71, 120 S.Ct. 2054. At trial, the parent asked the court to order "only one day of visitation per month (with no overnight stay) and participation in the Granville family's holiday celebrations." Id. at 71, 120 S.Ct. 2054. The Supreme Court criticized *370 the trial court's "failure to accord significant weight to [the parent's] already having offered meaningful visitation" in this regard to the grandparents. Id. at 72, 120 S.Ct. 2054.[5]
Justice Souter also noted the reasoning of the Supreme Court of Washington in the same case:
"`Some parents and judges will not care if their child is physically disciplined by a third person; some parents and judges will not care if a third person teaches the child a religion inconsistent with the parents' religion; and some judges and parents will not care if the child is exposed to or taught racist or sexist beliefs. But many judges and parents will care, and, between the two, the parents should be the ones to choose whether to expose their children to certain people or ideas.'"
530 U.S. at 79 n. 4, 120 S.Ct. 2054 (quoting In re Smith, 137 Wash.2d 1, 21, 969 P.2d 21, 31 (1998)). We agree, and therefore affirm, consistent with our holding in J.S., that a parent's right to make decisions regarding unsupervised visitation of his or her child with a nonparent is a fundamental liberty interest entitled to strict scrutiny under the decisional framework of the Fourteenth Amendment.

D. The Showing Required by § 30-3-4.1
Finally, we turn our attention to the issue of what showing must be made in order to override the parent's fundamental right to make decisions regarding unsupervised visitation of his or her child with a nonparent. More specifically for purposes of the present case, the question is whether a finding by the trial court that the unsupervised visitation will be in the "best interests" of the child is sufficient to overcome the presumption that exists in favor of a parent's contrary decision.
We begin our discussion of this issue, however, by noting that the statute in question expressly creates a "rebuttable presumption" in favor of visitation by the grandparent. Ala.Code 1975, § 30-3-4.1(e).[6] Such a presumption in favor of grandparent visitation over a contrary decision by a parent was held unconstitutional in Troxel:
"The problem here is not that the Washington Superior Court intervened, but that when it did so it gave no special *371 weight at all to Granville's determination of her daughters' best interests. More importantly, it appears that the Superior Court applied exactly the opposite presumption. ...
". . . .
"The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interests of his or her child."
530 U.S. at 69, 120 S.Ct. 2054. Consistent with Troxel, we hold that the rebuttable presumption stated in Ala.Code 1975, § 30-3-4.1(e), in favor of grandparental visitation is unconstitutional.
Our holding today, however, is not limited to the unconstitutionality of the statute's presumption in favor of grandparental visitation. Even if there were no such presumption, and the statute's prescribed burden of proving the child's "best interests" were placed on the grandparents, this would not be a sufficient showing to overcome a parent's fundamental liberty interest in making decisions regarding the care, custody, and control of his or her child.
We note that, in Troxel, Justices Souter and Thomas both viewed the Washington statute as unconstitutional on its face, even though the statute did not by its terms shift the burden of proof to the parents. Even Justice Kennedy, in his dissent, acknowledged that the mere "best interests of the child" standard could in some cases give insufficient protection to the parents' constitutional right to raise a child without undue intervention by the State. Troxel, 530 U.S. at 94, 120 S.Ct. 2054 (Kennedy, J., dissenting).
Moreover, before ever discussing the shifting of the burden of proof undertaken by the Washington trial court, the Troxel plurality criticized the Washington statute's lack of deference to the parent's visitation decision:
"Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. [The Washington statute] contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn any decision by a fit, custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests."
530 U.S. at 67, 120 S.Ct. 2054.
After describing the heightened burdens of proof that have been established in numerous states for grandparents seeking visitation (Troxel, 530 U.S. at 70, 120 S.Ct. 2054), the Troxel plurality explained that "the decision whether [a grandparental] relationship would be beneficial in any specific case is for the parent to make in the first instance." 530 U.S. at 70. "It is not within the province of the state to make [a different decision] concerning the custody of children merely because it could make a `better' decision." Troxel, 530 U.S. at 78, 120 S.Ct. 2054 (Souter, J., concurring; quoting In re Smith, 137 Wash.2d at 20, 969 P.2d at 31). In J.S., this court concluded:
"`The Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child-rearing *372 decisions simply because a state judge believes a "better" decision could be made.'"
___ So.2d at ___ (quoting Troxel, 530 U.S. at 72-73, 120 S.Ct. 2054). We affirm that conclusion today and extend it to the statute before us.
If the grandparents in this case had been required to show that the child would be harmed by being deprived of unsupervised or overnight visitation with the grandparents, we might have a different case. The state has a compelling interest in preventing harm to children. See In re Smith, 137 Wash.2d at 13-21, 969 P.2d at 27-31 (reviewing various Supreme Court decisions upholding state initiatives designed to prevent harm to children in the context of a Fourteenth Amendment strict-scrutiny analytical framework); Williams v. Williams, 256 Va. 19, 22, 501 S.E.2d 417, 418 (1998) (holding that for a "compelling state interest" to exist, justifying an order of visitation over the objection of a child's parents, a court must find an actual harm to the child's health or welfare without such visitation; construing Virginia's statute as requiring such a finding). See also R.J.D. v. Vaughan Clinic, P.C., 572 So.2d 1225, 1228 (Ala.1990) (upholding mother's decision regarding medical care in the absence of neglect or abuse); Ex parte Terry, 494 So.2d at 632 (recognizing strong presumption in favor of parent's right to custody absent misconduct or neglect which renders the parent unfit). That is not the case before us, however. As previously observed, under the circumstances presented in this case, the state has no compelling interest in choosing between two competing, alternative decisions as to whether to allow overnight or other unsupervised grandparent visitation when neither of the two alternative decisions is harmful to the child.
The fundamental right of a fit parent to decide the issue of unsupervised grandparental visitation, in the absence of harm or potential harm to the child if such visitation is not allowed, requires more respect for the parent's initial decision than is achieved by allowing a trial court to decide what is in the "best interests" of the child and then to substitute its decision for the parent's decision. To discard the parent's decision as to what is in his or her child's best interests merely because that decision is not the same as the one the state would make would be to deny the fundamental nature of the parent's right to make that decision in the first place. We therefore hold that § 30-3-4.1 is unconstitutional as applied in this case.
Based on the foregoing, the trial court's judgment is reversed and this case is remanded for that court to enter an order consistent with this opinion.
The appellee's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur in the result.
YATES, Presiding Judge, concurring in the result.
I agree with Judge Murdock that a parent's right to make decisions regarding his or her child's visitation with a nonparent is a fundamental liberty interest entitled to strict scrutiny under the Fourteenth Amendment. See J.S. v. D.W., [Ms. 2990431, May 4, 2001] ___ So.2d ___ (Ala. Civ.App.2001). I agree that the statutory presumption in favor of grandparent visitation established by § 30-3-4.1, Ala.Code 1975, is unconstitutional as applied, based on Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). I also *373 agree that even if the grandparents could prove that visitation was in "the best interests of the child," that fact would not overcome the parents' fundamental liberty interest in making decisions regarding the care, custody, and control of their child. "In contrast to parental rights, a grandparent's right to visitation is a recent statutory creation and is not a fundamental right on an equal footing with the right of a parent." J.S. v. D.W., ___ So.2d at ___. I cannot, however, agree with all of the statements in the opinion.
CRAWLEY, Judge, concurring in the result.
I agree with the discussion of the applicable legal principles. However, I conclude that Ala.Code 1975, § 30-3-4.1, is per se, or facially, unconstitutional. The opinion recognizes that a fit parent has a fundamental right "in the absence of harm or potential harm to the child" to determine when a grandparent may visit his or her child and that § 30-3-4.1 is not narrowly tailored to protect that fundamental right. 812 So.2d at 372. I agree with that reasoning except for the phrase I quoted above"in the absence of harm or potential harm to the child." Our state has a procedure for protecting children from harmthe invocation of dependency jurisdiction. See Ala.Code 1975, § 12-15-1 et seq., and § 26-18-1 et seq. See also my opinion concurring in the result in J.S. v. D.W., [Ms. 2990431, May 4, 2001] ___ So.2d ____ (Ala.Civ.App.2001).
NOTES
[1] In holding that the state has no compelling interest in enabling relationships between grandparents and grandchildren, we do not suggest that such relationships would not be in the "best interests" of grandchildren. To the contrary, for the reasons noted in the text, we are clear to the view that, typically, it would be in the "best interests" of a child to have a relationship with his or her grandparents. We are not persuaded, however, that for purposes of due-process analysis, the state has a "compelling interest" in deciding the "best interests" of a child. "Our constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations." Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). "[H]istorically[, the law] has recognized that natural bonds of affection lead parents to act in the best interests of their children," id. (emphasis added), and therefore has "entrusted [parents] with providing for the best interest of their children," R.J.D. v. Vaughan Clinic, P.C., 572 So.2d 1225, 1228 (Ala.1990). "So strong is the presumption, that `the care which is prompted by the parental instinct, and responded to by filial affection, is most valuable of all'; and so great is the reluctance of the court to separate a child of tender years from those who according to the ordinary laws of human nature, must feel the greatest affection for it, and take the deepest interest in its welfarethat the parental authority will not be interfered with, except in case of gross misconduct or where, from some other cause, the parent wants either the capacity or the means for the proper nurture and training of the child." Ex parte Sullivan, 407 So.2d 559, 563 (Ala.1981) (quoting Striplin v. Ware, 36 Ala. 87, 89-90 (1860)). Thus, it is the parents who have a "compelling interest" in the best interests of their child, not the state. See Hawk v. Hawk, 855 S.W.2d 573 (Tenn.1993) (rejecting argument that state has compelling interest in the best interests of a child); Hoff v. Berg, 595 N.W.2d 285, 291-92 (N.D.1999) (which, as the plurality in Troxel noted, held North Dakota's grandparent-visitation statute unconstitutional because the State has no "compelling interest in presuming visitation rights of grandparents to an unmarried minor are in the child's best interests"). To hold otherwise would make it possible for the state to override parental decisions in any area and make constitutional all manner of incursion into the fundamental rights of parents to raise and care for their children as they see fit. See Griggs v. Barnes, 262 Ala. 357, 364, 78 So.2d 910, 916 (1955) (quoting the decision of the California Supreme Court in In re Guardianship of Smith, 255 P.2d 761, 762 (Cal.1953), superseded on other grounds on rehearing, 42 Cal.2d 91, 265 P.2d 888 (1954)).
[2] In J.S. v. D.W., [Ms. 2990431, May 4, 2001] ___ So.2d ___, ___ (Ala.Civ.App.2001), we stated: "Although the `best-interests' standard applies in custody and visitation statutes involving parents, those cases involve competing parental rights. In other words, in those cases the rights of both the mother and the father are involved and neither parent's rights outweigh the other's." See generally, e.g., Ex parte Couch, 521 So.2d 987 (Ala.1988).
[3] As Justice Thomas noted in Troxel, the opinion of the plurality and those of Justice Kennedy and Justice Souter do not explain what standard of review under the Fourteenth Amendment they apply. 530 U.S. at 80, 120 S.Ct. 2054.
[4] The Pennsylvania Supreme Court, in Commonwealth ex rel. Zaffarano v. Genaro, 500 Pa. 256, 455 A.2d 1180 (1983), recognized that three potential arrangements exist in the typical grandparent-visitation proceeding: (1) custody, "a relatively permanent arrangement that involves keeping and caring for a child on a continual basis and that affords the custodian the greatest degree of day-to-day control over the child"; (2) visitation, which allows for limited control over the child and short-duration contacts "since visits must be held in the presence of the child's custodian"; and (3) "partial custody, which involves greater control over the child than does visitation because it takes place away from the child's custodian, and which may involve contacts of relatively long duration, such as a weekend or a month of summer vacation." 500 Pa. at 260, 455 A.2d at 1182. Neither Zaffarano nor the present case involves "supervised visitation" as described in clause (2), above. Instead, as the petitioning grandparents did in Zaffarano, Troxel, and J.S., the paternal grandfather in the present case has sought unsupervised, exclusive contact with the child, which would cross the line into the realm of "partial custody."
[5] Even as to supervised visitation as described in clause (2) of note 4, supra, some deference must be given to the parent's initial decision. A fit parent arguably has a fundamental right to make reasonable decisions as to whether and to what extent to allow occasional supervised visits between his or her children and their grandparents. It is questionable, however, whether the zone of fundamentality associated with parental rights includes parental decisions as to supervised grandparent visits that are arbitrary or unreasonable. See, e.g., In re G.P.C., 28 S.W.3d 357 (Mo.Ct.App.2000) (upholding court-ordered visitation in the presence of parents under a statute that provided that `the court may grant grandparent visitation when ... [a] grandparent is unreasonably denied visitation with the child for a period exceeding 90 days" and it is determined to be in the best interests of the child). See generally discussion, supra, regarding rational interest of state in enabling some relationship between grandparents and grandchildren. Statutory provisions in several states provide that, under certain circumstances, courts may not award visitation unless a parent has denied, or unreasonably denied, visitation to a grandparent. Cf. Miss.Code Ann. § 93-16-3(2)(a), Ore.Rev.Stat. 109.121(1)(a)(B), and R.I. Gen. Laws § 15-5-24.3(a)(2)(iii)-(iv) (1999 Supp.) (all of which are statutory provisions that, under certain circumstances, allow courts to award visitation only when a parent has denied, or unreasonably denied, visitation to a grandparent).
[6] Although the trial court makes no mention of this presumption in its judgment, we assume that it applied the presumption.